**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE: | Chapter 11 |
| YOGAWORKS, INC., *et al.* | Case No. 20-12599 - KBO |
| Debtors.[1] | (Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER**
**(I) AUTHORIZING DEBTORS TO (A) REJECT CERTAIN UNEXPIRED**
**LEASES OF NONRESIDENTIAL REAL PROPERTY NUNC PRO TUNC TO**
**THE PETITION DATE; (B) ABANDON CERTAIN PERSONAL PROPERTY IN**
**CONNECTION THEREWITH; AND (C) GRANTING RELATED RELIEF; AND**
**(II) FOR ENTRY OF AN ORDER ESTABLISHING PROCEDURES FOR THE**
**REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

---

**THIS MOTION SEEKS TO REJECT CERTAIN UNEXPIRED LEASES OF**
**NONRESIDENTIAL REAL PROPERTY. PARTIES RECEIVING THIS**
**MOTION SHOULD REVIEW THE MOTION TO SEE IF THEIR**
**NAME(S) AND/OR LEASE(S) ARE SET FORTH IN THE MOTION**
**AND/OR THE EXHIBITS ATTACHED THERETO TO DETERMINE**
**WHETHER THE MOTION AFFECTS THEIR LEASE(S).**

---

YogaWorks, Inc., a Delaware corporation ("YogaWorks"), and Yoga Works, Inc., a California corporation ("Yoga Works") (collectively, the "Debtors"), the debtors and debtors in possession in the above-captioned chapter 11 cases (the "Cases"), hereby move the Court (the "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Proposed Order"), pursuant to sections 105(a), 365 and 554 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), and Rules 6006, 6007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (I) authorizing the Debtors to reject certain unexpired leases of nonresidential real property *nunc pro tunc* to October 14,

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number is (1) YogaWorks, Inc., a Delaware corporation (9105); and (2) Yoga Works, Inc., a California corporation (0457).

2020 and abandon certain commercial property in connection therewith, and (II) approving procedures for the rejection of executory contracts and unexpired leases throughout these Cases, and granting authority to take all actions necessary to implement such procedures, including abandonment of the Remaining Property (as defined below). In support of the Motion, the Debtors rely on the *Declaration of Brian Cooper in Support of First Day Motions* (the "First Day Declaration"),[2] which is fully incorporated herein by reference.  In further support of the Motion, the Debtors respectfully represent as follows:

### JURISDICTION

1.        The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware,* dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Rule 9013-l(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.        Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.        The statutory and rule predicates for the relief sought herein are sections 105(a), 365(a) and 554(a) of title of the United States Code (the "Bankruptcy

---

[2] Any capitalized terms not otherwise defined herein shall have the meaning set forth in the First Day Declaration.

Code") and Rules 6006, 6007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## INTRODUCTION

4.      By this Motion, the Debtors seek authority to Reject the Burdensome Leases (defined below) as of October 14, 2020, the petition date.  The underlying leases (i) provide no benefit to the Debtors' estates and their creditors, (ii) are no longer being used, and (iii) are not necessary for the Debtors' reorganization.  Rejection of the Burdensome Leases will result in reduced operating costs (over $850,000.00 per month) so rejection is appropriate and will serve the best interest of the Debtors' estates and their creditors.

5.      In addition, by this Motion, the Debtors seek approval of procedures for the rejection of executory contracts and unexpired leases throughout these Cases, and granting authority to take all actions necessary to implement such procedures, including abandonment of the Remaining Property.

6.      For these reasons which will be discussed in greater detail below, the Debtors respectfully request the Court grant the Motion in its entirety.

## BACKGROUND INFORMATION

### A.      The Debtors' Bankruptcy Cases

7.      The Debtors filed their respective voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on October 14, 2020 (the "Petition Date"). The Debtors are continuing in possession of their property, and operating and managing their businesses, as debtors in possession pursuant to Bankruptcy Code §§ 1107 and 1108. No trustee, examiner, or committee has been appointed in these chapter 11 cases.

B.      **Description of the Debtors' Businesses**

8.      The Debtors operated a yoga business with over sixty (60) studio locations across the United States in Los Angeles, Orange County, Northern California, New York City, Boston, Baltimore, the Washington, D.C. area, Houston and Atlanta until March 2020 when the Debtors closed all of their storefront locations in response to the operating restrictions tied to the COVID-19 pandemic.  While a few of the stores reopened for a short period of time, the Debtors closed all of their studios indefinitely in September 2020.  The Debtors' corporate headquarters was located in Culver City, California until mid-2020 when it was moved to Santa Monica, California.

9.      The Debtors were founded in 1987 with one studio in Santa Monica, California and grew significantly over the years to over seventy (70) studios at one time.  The Debtors also expanded their business model to include teacher training and in 2013, began offering pre-recorded classes digitally.

10.     The Debtors continued expanding and went public in 2017 (though they voluntarily de-listed from the NASDAQ in early 2020).  Unfortunately, the Debtors were too focused on expansion and failed to successfully integrate acquired studios with existing operations, and as a result the enterprise was faltering and the Debtors started to lose money.

11.     During the first half of 2019, the Debtors attempted to find a buyer using investment banker Guggenheim Securities ("Guggenheim") but those efforts were unsuccessful. The Debtors were trying to improve their finances when COVID-19 hit and the Debtors were forced to close all of its studios.  The closure of the studios left the Debtors with significantly decreased revenue.

12.     Fortunately, the Debtors quickly developed a robust and successful live streaming and on-demand digital platform that has allowed them to survive and find a buyer for substantially all of their assets.

13.     In approximately May 2020, the Debtors re-engaged Guggenheim as well as Force Ten Partners, LLC ("Force 10"), an advisory firm specializing in business restructuring and sourcing buyers for distressed businesses, to help them find a buyer for the business. Guggenheim approached at least twenty (20) private equity firms and other potential bidders who participated in the out-of-court financing solicitation, to discuss interest in a restructuring. At the same time, Force 10 approached approximately thirty-five (35) parties. Through those discussions, the Debtors, in their business judgment, agreed to terms with Serene Investment Management, LLC or its affiliates ("Serene" or the "Stalking Horse") regarding a "stalking horse" bid to purchase the Debtors' assets.

14.     The Debtors filed the Cases to complete the open and competitive process to sell substantially all of their assets.  The Debtors intend to maintain their current operations of providing online classes and instruction via their live stream and on-demand platforms, YogaWorks Live and My YogaWorks, while this sale process is ongoing.  Their goal is to sell their digital businesses as a going concern, officially shut down all brick and mortar operations (subject to any successful overbidder desiring to keep certain studios open), sell any remaining unsold assets, and wind up their estates.  The proposed sale to the Stalking Horse Bidder does not include any of the Burdensome Leases.

15.     A more detailed description of the Debtors' background, structure, operations and recent financial history is detailed in the First Day Declaration.

C.      **The Burdensome Leases**

16.     Prior to the Petition Date, the Debtors entered into written agreements as the lessee under the leases listed in **Exhibit 1** attached to this Motion (collectively the "Burdensome Leases").  The Burdensome Leases are subject to Bankruptcy Code section 365. Since mid March 2020,[3] the Debtors' studios have been closed as a result of the COVID-19 outbreak and, with rare exception, the Debtors have not paid rent to their landlords since April 2020.  Moreover, the proposed sale to the Stalking Horse Bidder does not include a transfer of the Burdensome Leases.  Accordingly, after evaluating each of the Burdensome Leases, the Debtors have concluded that the Burdensome Leases must be rejected effective as of the Petition Date.  The Debtors have concluded that the Burdensome Leases are unlikely to generate value for the Debtors' estates, and that, in the exercise of the Debtors' business judgment, it is in the best interest of the estates to reject the Burdensome Leases.  Rejection of the Burdensome Leases will allow the Debtors to avoid unnecessary administrative expenses.

## BASIS FOR RELIEF

A.      **The Business Judgment Rule is the Standard That Controls the Court's Scrutiny of Debtors' Decision to Reject an Executory Contract or Unexpired Lease**

17.     The Debtors are authorized to operate their businesses under section 1107(a), which provides that:

> [s]ubject to any limitations on a trustee serving in a case under this chapter, and to such limitation or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2)(3) and (4) of this title, of a trustee serving in a case under this chapter.

11 U.S.C. § 1107(a).

---

[3] A few of the studios in Maryland, Georgia and Texas were allowed to reopen for a short period of time but the Debtors closed them in September 2020 because student attendance was very low.

18.    One of the components of operating a business is the ability to assume or reject an executory contract or unexpired lease. Specifically, Bankruptcy Code section 365(a) provides, in relevant part that "the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). Through section 365, a debtor is able "to use valuable property of the estate and to renounce title to and abandon burdensome property." *In re Republic Airways Holdings Inc.*, 547 B.R. 578, 582 (Bankr. S.D.N.Y. 2016) (quoting *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993)); *see also In re Exide Techs.*, 607 F.3d 957, 967 (3d Cir. 2010) ("Courts may use § 365 to free a [debtor] from burdensome duties that hinder its reorganization"); *In re Bildisco*, 465 U.S. 513, 528 (1984) ("[T]he authority to reject an executory contract is vital to the basic purpose to a Chapter 11 reorganization, because rejection can release the debtor's estate from burdensome obligations that can impede a successful reorganization.").

19.    In order to determine whether the assumption or rejection of an unexpired nonresidential lease should be authorized, Courts apply the "business judgment" test, which requires a debtor to have determined that the requested assumption or rejection would be beneficial to its estate. *See Grp. of Institutional Inv'rs, Inc. v. Chi., Milwaukee, St. Paul & Pac. R.R.*, 318 U.S. 523, 550 (1943) (noting that "the question whether a lease should be rejected . . . is one of business judgment"); *In re Bildisco*, 682 F.2d 72, 79 (3d Cir. 1982), *aff'd*, 465 U.S. 513 ("The usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test."); *accord In re HQ Glob. Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003).

20.     Courts give deference to a debtor's decision to assume or reject leases. *See e.g.*, *Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 39–40 (3d Cir. 1989) (affirming the rejection of a service agreement as a sound exercise of the debtor's business judgment when the bankruptcy court found that such rejection would benefit the debtors' estate); *In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001) ("[A] debtor's decision to reject an executory contract must be summarily affirmed unless it is the product of bad faith, or whim or caprice.").

21.     As set forth in the First Day Declaration, sound business judgment requires the rejection of the Burdensome Leases. The Burdensome Leases provide no benefit to the Debtors' estates and their creditors and add no value to the Debtors' reorganization. The Debtors, in the exercise of their business judgment, have decided to cease business operations at the locations covered by the Burdensome Leases. Most of the Debtors' studio locations for the Burdensome Leases have been closed since mid-March 2020 and all of them have been closed since September 2020, when the Debtors announced that each of the locations would be permanently closed. The proposed sale of the Debtors' assets to the Stalking Horse Bidder does not include the Burdensome Leases. The Debtors analyzed the Burdensome Leases to determine if they were below market such that some value could be realized upon a sale of the Debtors' assets. The Debtors determined that none of the Burdensome Leases was sufficiently below market such that it was worth the risk of delaying rejection and accruing administrative rent on the chance that a potential buyer might want to purchase the Burdensome Leases.

22.     The underlying leased locations are therefore no longer being used and are not necessary for the Debtors' reorganization. Rejection of the Burdensome Leases will result in a substantial reduction of operating costs (over $850,000 per month). As such, rejection of the

Burdensome Leases is a necessary component of the Debtors' bankruptcy and will serve the best interests of the Debtors' estates and their creditors.

23.    In these Cases, the interests of creditors would best be served if the Burdensome Leases are rejected. The Burdensome Leases provide no benefit to the Debtors' estates and in fact are detrimental to the Debtors' bankruptcy cases because of the administrative expense associated with the Burdensome Leases.   Therefore, rejection of the Burdensome Leases is appropriate.

**B.    Rejection of the Burdensome Leases as of the Petition Date is Appropriate**

24.    Courts in this and other circuits have authorized the rejection of the leases *nunc pro tunc* and held that a bankruptcy court may authorize the retroactive rejection of a nonresidential lease if the balance of the equities favors such retroactive rejection. *See In re Chi-Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. D. Del. 2004) (acknowledging that a bankruptcy court may approve a rejection retroactive to the date the motion is filed after balancing the equities in the particular case); *In re Fleming Cos.*, 304 B.R. 85, 96 (Bankr. D. Del. 2003) (stating that rejection has been allowed *nunc pro tunc* to the date of the motion or the date the premises were surrendered); *see also Thinking Machs. Corp. v. Mellon Fin. Servs. Corp. (In re Thinking Machs. Corp.)*, 67 F.3d 1021, 1028 (1st Cir. 1995) (finding that, in the context of rejections of executory contracts, "bankruptcy courts may enter retroactive orders of approval, and should do so when the balance of equities preponderates in favor of such remediation"). Courts in this jurisdiction recently have authorized debtors to reject unexpired nonresidential leases *nunc pro tunc* to the date that the debtors filed their petitions for bankruptcy protection. *See, e.g.*, *In re Mac Acquisition LLC*, Ch. 11 Case No. 17-12224 (MFW) (Bankr. D. Del. Nov. 13, 2017); *In re Marsh Supermarkets Holding, LLC*, Ch. 11 Case 17-11066 (BLS) (Bankr. D. Del. May 7, 2017);

*In re Ltd. Stores Co.*, Ch. 11 Case No. 17-10124 (KJC) (Bankr. D. Del. Jan. 30, 2017); and *In re Sugarfina, Inc.,* No. 19-11973 (MFW) (Bank. D. Del. Sept. 6, 2019).

25.    In these Cases, the balance of the equities favors approval of the rejection of the Burdensome Leases *nunc pro tunc* to the Petition Date.  The Debtors have informally advised most, if not all, of the landlords for the Burdensome Leases that the Debtors will be surrendering the premises and terminating the lease.  The Debtors have also removed their property from the premises at approximately one-half of the studios.  The requested rejection *nunc pro tunc* will allow the Debtors to avoid incurring unnecessary administrative expenses, over $850,000 per month, to the detriment of their creditors.

26.    Accordingly, the Debtors submit that rejection of the Burdensome Leases as of the Petition Date is necessary and appropriate in the Cases.

**C.    Abandonment of Any Property is Authorized by Section 554(a) of the Bankruptcy Code**

27.    Under section 554(a) of the Bankruptcy Code, a debtor, after notice and a hearing, is authorized to "abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). The right to abandon property is extensive, unless (a) abandonment of the property will contravene laws designed to protect public health and safety or (b) the property poses an imminent threat to the public's welfare. *See In re Midlantic Nat'l Bank*, 474 U.S. 494, 501 (1986). Neither is relevant in the Cases.

28.    Any commercial personal property left in the locations of the Burdensome Leases, such as yoga mats or other items used for in-person classes, is of inconsequential value to the Debtors' estates, and the costs to the Debtors of removing or storing such property will exceed any economic benefit that may come from retaining such property.  Accordingly, in the

exercise of their business judgment, the Debtors have determined that abandonment of any remaining property will be in the best interest of the Debtors and their estates.

**D.    Establishing Rejection Procedures With Respect to All Executory Contracts and Unexpired Leases Is Supported By The Debtors' Business Judgment**

29.    In an effort to minimize the postpetition expenses associated with the leases of burdensome studios, and the costs attendant to rejecting those leases, as well as expenses associated with the contracts that the Debtors deem, in their business judgment, to be unnecessary for, or burdensome to, the Debtors' ongoing operations, the Debtors seek approval of procedures with respect to all executory contracts (the "Contracts") and unexpired leases (the "Leases") (the "Rejection Procedures").  Such procedures are as follows:

a.    Rejection Notice. The Debtors will file a notice (the "Rejection Notice") setting forth the proposed rejection of one or more Contracts and/or Leases and will serve the Rejection Notice via U.S. mail on: (i) the counterparty to the Contract or Lease (the "Counterparty") (and counsel, if known) under the respective Contract of Lease at the last known address available to the Debtors; (ii) with respect to Real Property Leases ("Real Property Leases"), any known third party having an interest in personal property located at the leased premises ("Leased Premises"); (iii) any party known to assert a lien in any property subject to the rejected Contract or Lease; (iv) counsel to Serene, Randy Michelson, Esq., Michelson Law Group, 220 Montgomery Street, Suite 2100, San Francisco, CA 94104; (v) counsel to Great Hill Partners, Kelly Dybala, Esq., Sidley Austin, 2021 McKinney Ave., Suite 2000, Dallas, TX 75201, and Matthew A. Clemente, Esq., Sidley Austin, One South Dearborn Street, Chicago, IL 60603; (vi) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: Benjamin Hackman), Benjamin.A.Hackman@usdoj.gov. and (vi) counsel to any committee appointed in these Cases (collectively, the "Rejection Notice Parties").

b.    Content of Rejection Notice. The Rejection Notice shall be substantially in the form attached as Exhibit B. With respect to Real Property Leases, the Rejection Notice shall set forth the following information, to the best of the Debtors' knowledge: (i) the street address of the related real property; (ii) the name and address of the landlord (the "Landlord"); (iii) the date on which the Debtors will vacate (or have vacated) the Leased Premises; and (iv) a brief description of any personal property or furniture, fixtures and equipment to be abandoned. With respect to all other Contracts or Leases to be rejected, the Rejection Notice shall set forth the following information, to the best of the Debtors' knowledge: (i) the name and address of the Counterparty; and (ii) a brief description of the Contract or Lease to be

rejected. All Rejection Notices will be accompanied by a copy of the proposed order approving the rejection of the Contracts and/or Leases set forth on the Rejection Notice (each such order a "Rejection Order").

c.      Objections. Should a party in interest object to the Debtors' proposed rejection of a Contract or Lease, such party must file and serve a written objection (an "Objection") so that it is filed with this Court and actually received by the following parties (the "Objection Notice Parties") no later than fourteen (14) days after the date the Rejection Notice is filed: (i) proposed counsel to the Debtors: Cozen O'Connor, 1201 North Market Street, Suite 1001, Wilmington, DE 19801, Attn: Thomas J. Francella, Jr., Tfrancella@cozen.com, Shulman Bastian Friedman & Bui LLP, 100 Spectrum Center Drive; Suite 600 Irvine, CA 92618 Attn: Alan Friedman, afriedman@shhulmanbastian.com and mlowe@shulmanbastian.com and Whiteford Taylor & Preston LLC, 500 N. King Street, Suite 500, Wilmington, Delaware 19801 Attn:  Richard W. Riley, rriley@wtplaw.com; (ii) counsel to Serene, Randy Michelson, Esq., Michelson Law Group, 220 Montgomery Street, Suite 2100, San Francisco, CA 94104; (iii) counsel to Great Hill Partners, Kelly Dybala, Esq., Sidley Austin, 2021 McKinney Ave., Suite 2000, Dallas, TX 75201 (kdybala@sidley.com), and Matthew A. Clemente, Esq., Sidley Austin, One South Dearborn Street, Chicago, IL 60603 (mclemente@sidley.com); (iv) the Office of the United States Trustee for the District  of Delaware, J. Caleb Boggs Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware  19801  (Attn: Benjamin Hackman, Benjamin.A.Hackman@usdoj.gov), and (v) counsel to any committee appointed in these Cases.

d.      Effects of Failing to File an Objection to a Rejection Notice. If no Objection to a Rejection Notice is timely filed and served, the applicable Contract or Lease shall be deemed rejected on the effective date set forth in the Rejection Notice (the "Rejection Date"); provided, however, that the Rejection Date for a Real Property Lease shall not be earlier than the later of (i) the date the Debtors file and serve a Rejection Notice for the Real Property Lease or (ii) the date the Debtors relinquish control of the applicable Leased Premises by notifying the affected Landlord in writing of the Debtors' irrevocable surrender of the premises.

e.      Remaining Property. Upon the Rejection Date, any personal property or furniture, fixtures and equipment (the "Remaining Property") remaining on the Leased Premises shall be deemed abandoned by the Debtors and the Landlords may dispose of any Remaining Property, in their sole discretion, free and clear of all liens, claims, encumbrances and interests, and without any liability to the Debtors and any third party and without waiver of any claim the Landlords may have against the Debtors.

f.      Effects of Filing an Objection to a Rejection Notice. If a timely Objection to a Rejection Notice is filed and received in accordance with the Rejection Procedures, the Debtors shall schedule a hearing on such Objection and shall provide at least seven (7) days' notice of such hearing to the objecting party and the Objection Notice Parties. If this Court upholds the Debtors' determination to reject the

applicable Contract or Lease, then the applicable Contract or Lease shall be deemed rejected (i) as of the Rejection Date or (ii) as otherwise determined by this Court as set forth in any order overruling such Objection.

g.     Consent Orders. Any Objection may be resolved without a hearing by an order of this Court submitted on a consensual basis by the Debtors and the objecting party.  If no Objection is filed, the Debtors may submit a form of order with the Court under certification of counsel substantially in the form attached to the Rejection Notice.

h.     Deadlines for Filing Claims. Any Rejection Order will be served on the appropriate Counterparties no later than five (5) days after entry of such order. Claims arising out of the rejection of Contracts or Leases must be filed on or before the later of (i) the deadline for filing proofs of claims established by this Court in these Cases or (ii) thirty-five (35) days after the date of entry of the applicable Rejection Order. If no proof of claim is timely filed, such claimant shall not be treated as a creditor with respect to such claims for voting on any chapter 11 plan in these Cases and shall be forever barred from asserting a claim for rejection damages and from participating in any distributions that may be made in connection with these Cases.

i.     Treatment of Security Deposits. If the Debtors have deposited funds with a Counterparty or Landlord as a security deposit or other arrangement, such Counterparty may not setoff or otherwise use such deposit without the prior authority of this Court or agreement of the Debtors.

30.     In connection with the foregoing Rejection Procedures, the Debtors also request that they be authorized to execute and deliver all instruments and documents, and take such other actions as may be necessary or appropriate to implement and effectuate the Rejection Procedures as approved by the Court and that entry of the requested order be without prejudice to the Debtors' right to seek further, other, or different relief regarding the Contracts or Leases.

31.     The Debtors will comply with the requirements of Bankruptcy Rule 6006(f) when serving the Rejection Notices. In addition, the Rejection Procedures satisfy the requirements of Rule 6006(f).

## RESERVATION OF RIGHTS

32.    Nothing contained herein is intended or shall be construed as: (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors; (iii) a waiver of any claims or causes of action which may exist against any creditor or interest holder; or (iv) an approval, assumption, or adoption of any agreement, contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code.

## NOTICE

33.    The Debtors will provide notice of this Motion to: (a) the Office of the United States Trustee for the District of Delaware; (b) the holders of the 30 largest unsecured claims against the Debtors; (c) counsel to Serene, Randy Michelson, Esq., Michelson Law Group, 220 Montgomery Street, Suite 2100, San Francisco, CA 94104; (d) counsel to Great Hill Partners, Kelly Dybala, Esq., Sidley Austin, 2021 McKinney Ave., Suite 2000, Dallas, TX 75201, and Matthew A. Clemente, Esq., Sidley Austin, One South Dearborn Street, Chicago, IL 60603; (e) counsel to any committee appointed in this case; (f) each party (lessor) subject to this Motion; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

34.    No prior motion for the relief requested herein has been made to this or any other court.

**WHEREFORE**, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as <u>Exhibit A</u>, (I) authorizing the Debtors to reject certain unexpired leases of nonresidential real property *nunc pro tunc* to October 14, 2020 and abandon certain commercial property in connection therewith, (II) approving procedures for the rejection of executory contracts and unexpired leases throughout these Cases and granting authority to take all actions necessary to implement such procedures, and (III) granting further relief as the Court may deem just and proper under the circumstances.

**[REMAINDER OF PAGE INTENTIONALLY BLANK]**

Dated:  October 15, 2020
Wilmington, Delaware

**COZEN O'CONNOR**

*/s/ Thomas J. Francella, Jr.*
Thomas J. Francella, Jr. (DE Bar No. 3835)
Thomas M. Horan (DE Bar No. 4641)
1201 North Market Street, Suite 1001
Wilmington, DE 19801
Telephone:  (302) 295-2000
Facsimile:   (302) 250-4495
E-mail: tfrancella@cozen.com
E-mail: thoran@cozen.com

-and-

**SHULMAN BASTIAN FRIEDMAN & BUI LLP**
Alan J. Friedman, Esquire
Melissa Davis Lowe, Esquire
100 Spectrum Center Drive; Suite 600
Irvine, CA 92618
Telephone:  (949) 427-1654
Facsimile:  (949) 340-3000
E-mail:
afriedman@shulmanbastian.com
mlowe@shulmanbastian.com

*Proposed Counsel to the Debtors and Debtors in Possession*

-and-

**WHITEFORD, TAYLOR & PRESTON LLC**[45]
Richard W. Riley (DE No. 4052)
The Renaissance Centre
405 North King Street, Suite 500
Wilmington, Delaware 19801
Telephone:     (302) 353-4144
Facsimile:     (302) 661-7950
Email:          rriley@wtplaw.com

*Proposed Counsel to the Debtors and Debtors in Possession*

---

[4]      Whiteford, Taylor & Preston LLC operates as Whiteford Taylor & Preston L.L.P. in jurisdictions outside of Delaware.

[5]      210 Muni LLC and American Commercial Equities LLC are both landlords of the Debtors and clients of Cozen O'Connor.  As a result, Whiteford Taylor & Preston LLC will be acting as Delaware Counsel for the Debtors in relation to the relief requested in this Motion regarding landlords 210 Muni LLC and American Commercial Equities LLC.