**<u>EXHIBIT B</u>**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| YOGAWORKS, *et al.,* | ) | Case No. 20-12599 – KBO |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |
| | ) | |

**RE: Docket No. 10**

## INTERIM ORDER (I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING AND USE CASH COLLATERAL; (II) GRANTING LIENS AND SUPER-PRIORITY CLAIMS AND ADEQUATE PROTECTION; (III) MODIFYING THE AUTOMATIC STAY; AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "<u>Motion</u>") dated October 15, 2020 of the above-captioned debtors and debtors-in-possession (individually "<u>Debtor</u>" and collectively, the "<u>Debtors</u>") in the above-captioned chapter 11 cases (collectively, the "<u>Cases</u>"), pursuant to sections 105, 362, 363, and 364 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "<u>Bankruptcy Code</u>"), Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and the corresponding local rules of this District (the "<u>Local Rules</u>"), requesting entry of an interim order ("<u>Interim Order</u>") and Final Order (as defined below) authorizing the Debtors to, among other things:

(i)     Obtain senior secured postpetition financing in an aggregate principal amount not to exceed $3,350,000 (the "<u>DIP Credit Facility</u>", and the loans provided to the Debtors thereunder, the "<u>DIP Loans</u>"), pursuant to the terms and conditions of the DIP Documents (as defined below), this Interim Order, and the Final Order;

(ii)     Enter into (a) Debtor-In-Possession Loan and Security Agreement (the "<u>DIP Agreement</u>"), substantially in the form attached as <u>Exhibit A</u> hereto, by and among the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number is (1) YogaWorks, Inc., a Delaware corporation (9105); and (2) Yoga Works, Inc., a California corporation (0457).

1

Debtors and Serene Investment Management, LLC ("Serene" or "Lender") and (b) the documents related to the DIP Agreement (together with the DIP Agreement, the "DIP Documents");

        (iii)    Execute and deliver the DIP Agreement and the other DIP Documents to the Lender pursuant thereto;

        (iv)    Grant to the Lender the DIP Liens (as defined below) on all of the DIP Collateral (as defined below) to secure the DIP Credit Facility and all obligations owing and outstanding thereunder and under the DIP Documents, as applicable, and the Interim Order and the Final Order, as applicable (collectively, and including all "Obligations" as defined in the DIP Agreement, the "DIP Obligations");

        (v)    Use the proceeds of the DIP Credit Facility in accordance with the DIP Agreement, the DIP Documents and this Interim Order, in all cases in accordance with the Budget,[2] a copy of which is attached hereto as Exhibit B, and as otherwise provided in the DIP Documents;

        (vi)    Use any Prepetition Collateral (as defined below), including the Cash Collateral, and provide adequate protection to those parties set forth herein that may have an interest in such Prepetition Collateral, including Cash Collateral, for any possible Diminution (as hereinafter defined);

        (vii)    Vacate and modify the automatic stay imposed by section 362 of the Bankruptcy Code solely to the extent necessary to implement and effectuate the terms of the DIP Documents and this Interim Order;

        (viii)    Assume and enter into the Restructuring Support Agreement ("RSA") between and among the Debtors, Serene and its affiliates including without limitation Yogaworks Investment Fund, LLC, and Great Hill Equity Partners V, LLC ("GHP"), dated October 9, 2020, a copy of which is attached hereto as Exhibit C;

---

[2] All capitalized terms not otherwise defined in this Interim Order shall have the meaning ascribed to same in the DIP Agreement.

(ix)     Schedule a final hearing (the "Final Hearing") to consider entry of an order (the "Final Order") granting the relief requested in the Motion on a final basis and approving the form of notice with respect to the Final Hearing; and

(x)     Waive, to the extent applicable, any stay of the immediate effectiveness of this Interim Order imposed by the Bankruptcy Code or the Bankruptcy Rules, such that this Interim Order shall be immediately effective upon its entry on the Court's docket.

The Court having considered the Motion, the Declaration of Brian Cooper in Support of Chapter 11 Petitions and First Day Relief (the "First Day Declaration"), the exhibits attached thereto, the Declaration of Adam Meislik, the proposed DIP Agreement, and the evidence submitted or adduced and the arguments of counsel made at the hearing on this Interim Order (the "Interim Hearing"); and notice of the Motion and the Interim Hearing having been given in accordance with Bankruptcy Rules 4001 and 9014; and the Interim Hearing having been held and concluded; and it appearing that granting the relief requested in the Motion on an interim basis is necessary to avoid immediate and irreparable harm to the Debtors pending the Final Hearing, and is otherwise fair and reasonable and in the best interests of the Debtors, their estates and their creditors, and is essential for the preservation of the value of the Debtors' property; and all objections, if any, to the entry of this Interim Order having been withdrawn, resolved or overruled by the Court; and after due deliberation and consideration, and good and sufficient cause appearing therefor:

IT IS FOUND AND DETERMINED that[3]:

A.     Petition Date.  On October 14, 2020 (the "Petition Date"), the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code with this Court.

---

[3] The findings and conclusions set forth herein constitute the court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.     Jurisdiction and Venue.   This Court has jurisdiction over these proceedings, pursuant to 28 U.S.C. §§ 157(b) and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, and over the persons and property affected hereby.   Venue for the Chapter 11 Case and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.   Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).   This Court may enter a final order consistent with Article III of the United States Constitution.

C.     Notice.   Notice of the Interim Hearing and notice of the Motion has been given by the Debtors to (i) the Office of the United States Trustee for the District of Delaware; (ii) the Debtors' thirty (30) largest unsecured creditors (excluding insiders); (ii) counsel to the Lender; (iii) all known holders of liens upon the Debtors' assets; (iv) the attorneys general in the states in which the Debtors conduct their business; (v) the Internal Revenue Service; (vi) counsel to GHP; (vii) all parties that have filed notices of appearance pursuant to Bankruptcy Rule 2002; and (viii) the United States Trustee for the District of Delaware by facsimile transmission, email, overnight courier and/or hand delivery.   Under the circumstances, such notice of the Interim Hearing and the Motion complies with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002 and 400, and the Local Rules.

D.     Debtors' Acknowledgments and Stipulations.   In requesting the financing from Lender and in exchange for and as a material inducement to Lender to agree to provide the financing in accordance with the DIP Credit Facility, and to the Prepetition Secured Lender (as defined below) in exchange for any potential Diminution (as defined below), the Debtors acknowledge, represent, stipulate and agree, for themselves and their estates, subject to the Challenge (as defined below) rights set forth in Paragraph 19 of this Interim Order, as follows:

4

(i)     As of the Petition Date, the Debtors have the following secured indebtedness: $10,000,000 in principal plus accrued and unpaid interest, fees and expenses owing under that certain Credit Agreement dated as of January 23, 2020 (the "Prepetition Loan Agreement") by and among the Debtors and YogaWorks Investment Fund LLC (as assignee of GHP) (in such capacity, the "Prepetition Secured Lender"), pursuant to which the Debtors reaffirmed the grant of liens on all or substantially all of their personal property (collectively, the "Prepetition Collateral"),

(ii)     as of the Petition Date: (A) the current outstanding principal balance of the Prepetition Secured Lender (exclusive of interest, fees, reimbursable expenses and other charges) is not less than $10,000,000 (collectively, the "Prepetition Obligation") is absolutely and unconditionally owed to the Prepetition Secured Lender; (B) the Prepetition Obligation constitutes legal, valid and binding obligations of the Debtors, enforceable in accordance with its terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code to the extent applicable); (C) no recoupments, offsets, defenses or counterclaims exist to the Prepetition Obligation; and (D) no portion of the Prepetition Obligation or any payments or other transfers made to the Prepetition Secured Lender or applied to the Prepetition Obligation prior to the Petition Date is subject to avoidance, subordination, recharacterization, recovery, attack, recoupment, offset, counterclaim, defense or Claim (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law;

(iii)     the liens of the Prepetition Secured Lender (the "Prepetition Liens") constitute valid, binding, enforceable (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code) and perfected liens with priority over any and all other liens in the Prepetition Collateral (except as otherwise provided in the Prepetition Loan Documents and

are not subject to any challenge or defense, including without limitation, respectively, avoidance, subordination, recharacterization, recovery, reduction, set-off, offset, attack, counterclaim, cross-claim or Claim (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law;

(iv)    the Debtors have waived, discharged and released any right they may have to challenge the Prepetition Obligation and the Prepetition Liens on the Prepetition Collateral and to assert any recoupments, offsets, defenses, claims, objections, challenges, causes of action and/or choses of action against any Prepetition Secured Lender with respect to the Prepetition Loan Documents, the Prepetition Obligation, the Prepetition Liens or the Prepetition Collateral;

(v)    any payments made on account of the Prepetition Obligation before the Petition Date were (A) payments out of the Prepetition Collateral and/or (B) made in the ordinary course of business and in exchange for reasonably equivalent value and did not diminish any property otherwise available for distribution to unsecured creditors;

(vi)    all of the Debtors' cash, including the cash in their deposit accounts and other accounts, wherever located, whether as original collateral or proceeds of other Prepetition Collateral, constitutes Cash Collateral (as defined below);

(vii)    the Lender is not a control person or insider (as defined in section 101(31) of the Bankruptcy Code) of any Debtor;

(viii)    until such time as all DIP Obligations are indefeasibly paid in full in cash or waived by the Lender, the Debtors shall not in any way prime or seek to prime (or otherwise cause to be subordinated in any way) the liens provided to the Lender by offering subsequent lender or any party-in-interest a superior or *pari passu* lien or claim with respect to the DIP Collateral pursuant to section 364(d) of the Bankruptcy Code or otherwise;

6

(ix)    until such time as all DIP Obligations are indefeasibly paid in full in cash or waived by the Lender, the Debtors shall not in any way or at any time seek allowance of any administrative expense claim against the Debtors of any kind or nature whatsoever, including, without limitation, claims for any administrative expenses of the kind specified in, or arising or ordered under sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726, 1113 and 1114, and sections 506(c) and 552(b) subject to entry of a final order, of the Bankruptcy Code that is superior to the DIP Liens;

(x)    the Prepetition Secured Lender is entitled, pursuant to sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, to adequate protection of its interest in the Prepetition Collateral, including the Cash Collateral, to the extent of any diminution in the value of the Prepetition Collateral occurring from and after the Petition Date (the "Diminution"), that may be caused by or arising as a result of (A) the incurrence and payment of the DIP Obligations, (B) the use of Prepetition Collateral (including Cash Collateral), and (C) imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code.

E.    Cash Collateral. For purposes of this Order, the term "Cash Collateral" shall mean and include all "cash collateral," as defined in section 363 of the Bankruptcy Code, in or on which the Lender or the Prepetition Secured Lender has a lien, security interest or any other interest (including, without limitation, any adequate protection liens or security interests), whether existing on the Petition Date, arising pursuant to this Order or otherwise, and shall include, without limitation:

(i)    all cash proceeds arising from the collection, sale, lease or other disposition, use or conversion of any real or personal property, in or on which the Lender or the Prepetition Secured Lender has a lien or a replacement lien, whether as part of the DIP Collateral or the

Prepetition Collateral, or pursuant to an order of the Court or applicable law or otherwise, and whether such property has been converted to cash, existed as of the commencement of these Cases, or arose or was generated thereafter;

(ii)     all of the respective deposits, refund claims and rights in retainers of the Debtors on which the Lender or the Prepetition Secured Lender holds a lien or replacement lien, whether as part of the DIP Collateral or Prepetition Collateral or pursuant to an order of the Court or applicable law or otherwise; and

(iii)     the proceeds of any sale, transfer or other disposition of DIP Collateral or Prepetition Collateral.

F.     <u>Adequate Protection</u>. Subject to the Challenge Period (defined below), the Prepetition Secured Lender is entitled, pursuant to sections 361, 363(e) and 364(c)(2), (c)(3) and (d) of the Bankruptcy Code, to adequate protection of its interest in the Prepetition Collateral, including the Cash Collateral, to the extent of any Diminution that may result from (i) the incurrence of the DIP Obligations, (ii) the use of Prepetition Collateral (including Cash Collateral), and (iii) imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code.

G.     <u>Findings Regarding the DIP Credit Facility</u>.

(i)     <u>Need for the DIP Credit Facility and to Use Cash Collateral</u>.  An immediate need exists for the Debtors to obtain funds pursuant to borrowings under the-DIP Credit Facility and to use Cash Collateral in order to continue operations, fund payroll and operating expenses, and to administer and preserve the value of their estates pending the Final Hearing.  The ability of the Debtors to finance their operations through the DIP Credit Facility and use of Cash Collateral is vital to the preservation and maintenance of the going concern value of the Debtors' estates, to maximize the value of the Debtors' assets for the benefit of their creditors, and to avoid immediate

and irreparable harm to the Debtors, their estates and their creditors.

(ii)     No Credit Available on More Favorable Terms.  The Debtors have been unable to obtain (a) unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense, or (b) credit for money borrowed secured by a lien on property of the estates on more favorable terms and conditions than those provided in the DIP Agreement and this Interim Order.  The Debtors are unable to obtain credit for borrowed money without granting to the Lender the DIP Protections (as defined below).

H.     Sections 506(c) and 552(b) Waivers. As a material inducement to get the Lender to agree to provide the DIP Credit Facility and recognizing the Lender agreeing to permit the use of the Prepetition Collateral (including Cash Collateral for payments made in accordance with the Budget (as defined below) and the terms of this Interim Order), subject to entry of the Final Order, the Lender is entitled to a waiver of the provisions of section 506(c), and the Prepetition Secured Lender is entitled to a waiver of the exceptions provided in sections 552(b)(1) and (2) of the Bankruptcy Code.

I.     Use of Proceeds of the DIP Credit Facility.  Proceeds of the DIP Credit Facility (net of any amounts used to pay fees, costs and expenses under the DIP Documents) shall be used in a manner consistent with the terms and conditions of the DIP Agreement and this Interim Order and in accordance with the Budget.

J.     Application of Proceeds of DIP Collateral.  All proceeds of any sale or other disposition of the DIP Collateral, if any, shall be applied in accordance with the Budget and the terms and conditions of the DIP Documents.

K.     Effect of Reversal; Good Faith.  The Lender has indicated a willingness to provide financing to the Debtors in accordance with the DIP Agreement and this Interim Order, provided

that the DIP Obligations, DIP Liens and other protections granted by this Interim Order and the DIP Documents will not be affected by any subsequent reversal or modification of this Interim Order as provided in section 364(e) of the Bankruptcy Code.  The Lender has acted in good faith in agreeing to provide the DIP Credit Facility approved by this Interim Order.

        L.    <u>Business Judgment and Good Faith Pursuant to Section 364(e)</u>.

        (i)    The extensions of credit under the DIP Credit Facility and the DIP Documents are fair, reasonable, and the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration;

        (ii)    The DIP Documents and use of Cash Collateral were negotiated in good faith and at arms' length between the Debtors, GHP and the Lender; and

        (iii)    The DIP Credit Facility loan proceeds to be obtained pursuant to the DIP Documents will be so advanced in good faith, and for valid business purposes and uses, as a consequence of which the Lender is entitled to the protection and benefits of section 364(e) of the Bankruptcy Code.

        M.    <u>Immediate Entry of Interim Order</u>. The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2) and Local Rule 4001-2(b). The permission granted herein to enter into the DIP Documents, to obtain funds thereunder and to use the Prepetition Collateral (including the Cash Collateral) pursuant to this Interim Order is necessary to avoid immediate and irreparable harm to the Debtors.  This Court concludes that entry of this Interim Order is in the best interests of the Debtors' respective estates and creditors as its implementation will, among other things, allow for access to the financing necessary for the continued flow of supplies and services to the Debtors necessary to sustain the operation of the

Debtors' existing businesses and further enhance the Debtors' prospects for a successful sale of substantially all of their assets. Based upon the foregoing findings, acknowledgements, and conclusions, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor;

NOW, THEREFORE, based upon the foregoing findings, and upon consideration of the Motion and the record made before this Court with respect to the Motion, including the record created during the Interim Hearing, and with the consent of the Debtors and the Lender to the form and entry of this Interim Order, and good and sufficient cause appearing therefor, and the Court being otherwise fully advised in the premises;

IT IS HEREBY ORDERED AND ADJUDGED THAT:

1.    <u>Motion Granted</u>.  The Motion is granted on an interim basis in accordance with the terms and conditions set forth in this Interim Order.  Any objections to the Motion with respect to entry of this Interim Order to the extent not withdrawn, waived or otherwise resolved, and all reservations of rights included therein, are hereby denied and overruled on the merits.  All capitalized terms not otherwise defined in this Interim Order shall have the meaning ascribed to same in the DIP Agreement.

2.    <u>The DIP Documents</u>.

(a)    <u>Approval of Entry Into the DIP Documents</u>.  The Debtors are authorized to execute, deliver and perform in accordance with the DIP Documents and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Interim Order and the DIP Documents, and to execute and deliver all instruments and documents which may be required or necessary for the performance by the Debtors under the DIP Documents and the creation and perfection of the DIP Liens described in and provided for by this Interim Order and the DIP Documents.  The Debtors are hereby authorized to use Cash Collateral.  The Debtors are hereby

11

authorized to do and perform all acts, pay the principal and other amounts described in the DIP Agreement and all other DIP Documents as such become due.

(b)   <u>Authorization for DIP Financing</u>.  To enable the Debtors to continue to preserve the value of their estates during the period prior to entry of the Final Order (the "<u>Interim Period</u>") and subject to the terms and conditions of this Interim Order, the Budget and the DIP Documents, upon the execution of the DIP Agreement and the other DIP Documents, the Debtors are hereby authorized to borrow, pursuant to the DIP Credit Facility, a principal amount not to exceed $1,000,000 on an interim basis during the Interim Period, and, subject to entry of a Final Order, a principal amount not to exceed $3,350,000 on a final basis.

(c)   <u>Conditions Precedent</u>.  The Lender shall have no obligation to make any loans under the DIP Agreement during the Interim Period unless the conditions precedent to making such loans under the DIP Agreement, as set forth in Sections 3.1 and 3.2, have been satisfied in full or waived by the Lender in its sole discretion.

(d)   <u>Enforceable Obligations</u>.  The DIP Documents shall constitute and evidence the valid and binding obligations of the Debtors, which obligations shall be enforceable against the Debtors, their estates and any successors thereto and their creditors or representatives thereof, in accordance with their terms.

(e)   <u>Protection of the Lender and Other Rights</u>.  Unless otherwise ordered by the Court, from and after the Petition Date, the Debtors shall use the proceeds of the DIP Credit Facility only for the purposes specifically set forth in the DIP Agreement and this Interim Order and in strict compliance with the Budget (subject to any variances thereto that may be permitted by the DIP Agreement or the Budget).

3.      The DIP Lien Priority.

(a)      To secure the DIP Obligations, the Lender is hereby granted pursuant to and in accordance with Sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, valid, enforceable and fully perfected liens (the "DIP Liens") in and on all of the property, assets or interests in property or assets of each Debtor, and all "property of the estate" (within the meaning of the Bankruptcy Code) of each Debtor, of any kind or nature whatsoever, real or personal, tangible or intangible or mixed, now existing or hereafter acquired or created, including, without limitation, all of each Debtor's now owned or hereafter acquired right, title, and interest in and to all cash, accounts, accounts receivable, goods, inventory, personal property, plant and equipment, commercial tort claims, intellectual property, contract rights, tax refunds, prepaid expenses, deposits, general intangibles, real estate, leaseholds, all proceeds or property recovered in connection with actions under chapter 5 of the Bankruptcy Code ("Avoidance Actions"), which such lien on Avoidance Actions is subject to entry of the Final Order, all intercompany claims, all claims, and causes of action of each Debtor or its respective estate (including, without limitation, all commercial tort claims of every kind and description, whether described in specificity in the DIP Documents or not) and any and all proceeds and property recovered therefrom, any and all proceeds arising from insurance policies, all intellectual property, and the equity interests of each direct subsidiary of each Debtor, which for the avoidance of doubt, shall include, without limiting the generality of the foregoing, all assets of each Debtor that constitute Prepetition Collateral, and all other property and assets including, without limitation, Cash Collateral, and all cash and non-cash proceeds, rents, products, substitutions, amendments and modifications, accessions, offspring and profits of any of the collateral described above (collectively, the "DIP Collateral");

(b)      The DIP Liens shall be effective immediately upon the entry of the Interim Order and shall not at any time, other than with respect to the Carve-Out (defined below), be made

13

subject or subordinated to, or made *pari passu* with, any other lien, security interest or claim existing as of the Petition Date or created thereafter, including under Sections 363 or 364(d) of the Bankruptcy Code or otherwise;

(c)     The DIP Liens shall be and hereby are deemed fully perfected liens and security interests, effective and perfected upon the date of the Interim Order, without the necessity of execution by the Debtors of mortgages, security agreements, pledge agreements, financing agreements, financing statements, account control agreements or any other agreements, filings or instruments, such that no additional actions need be taken by the Lender or any other party (including, without limitation, any depository bank or securities intermediary) to perfect such interests.  At all times prior to indefeasible payment in cash in full of the DIP Obligations or waiver by the Lender, the priority of the DIP Liens will:

(i)     Pursuant to Section 364(c)(2) of the Bankruptcy Code, be perfected first priority liens on all DIP Collateral which, as of the Petition Date, was unencumbered or subject to invalid, unperfected or avoidable liens;

(ii)    Pursuant to Section 364(c)(3) of the Bankruptcy Code, be perfected second priority liens on all DIP Collateral that was, as of the Petition Date, subject to valid, perfected, unavoidable liens in existence at the time of the commencement of the Cases (other than the liens in favor of the Prepetition Secured Lender) with a priority immediately junior to any such liens ("Senior Third-Party Liens");

(iii)   Subject to the Carve-Out (as defined below), be superpriority administrative expense claims (the "DIP Superpriority Claim" and, together with the DIP Liens, the "DIP  Protections") with priority in the Cases under sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims

14

and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c) (subject to entry of a final order), 507(a), 507(b), 546(c), 546(d), 1113 and 1114 of the Bankruptcy Code and pursuant to any other provision of the Bankruptcy Code except as otherwise set forth herein, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment.  The DIP Superpriority Claim shall be payable from all prepetition and postpetition property of the Debtors and all proceeds thereof, subject to the Carve-Out (as defined below), provided that the DIP Superpriority Claim shall be payable from the proceeds of the Avoidance Actions only upon entry of the Final Order; and

(iv)    The DIP Liens shall be valid and enforceable against any trustee appointed in the Cases, upon the conversion of any of the Cases to a case under Chapter 7 of the Bankruptcy Code (a "Successor Case"), or upon the dismissal of the any of the Cases or Successor Case.

4.    Authorization to Use Proceeds of the DIP Credit Facility and Cash Collateral. Pursuant to the terms and conditions of this Interim Order, the DIP Agreement and the other DIP Documents, and in accordance with the Budget and any variances thereto that may be permitted pursuant thereto or pursuant to the DIP Agreement, the Debtors are authorized to use the borrowings pursuant to the DIP Agreement and to use Cash Collateral during the Interim Period and terminating upon the occurrence of an Event of Default (as defined below) and the termination of the DIP Agreement in accordance with its terms and subject to the provisions hereof.  Subject to the terms of the DIP Agreement, the Debtors and the Lender may agree in writing to modify the Budget in their discretion at any time that the DIP Credit Facility remains outstanding.

15

5.       <u>Relief from the Automatic Stay</u>.  Subject to entry of a Final Order of the Court, and only upon five (5) Business Days' prior written notice to the Debtors, counsel approved by this Court for the Committee[4] and the U.S. Trustee and as set forth in this Interim Order or Final Order (when applicable), the Lender is hereby granted relief from any stay of proceeding (including, without limitation, the automatic stay applicable under section 362 of the Bankruptcy Code to the holder or holders of any security interest) to (i)  permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any assets of either of the Debtors which have a value in excess of $100,000 in the aggregate or (ii) permit other actions that would have a Material Adverse Effect on the Debtors or their estates (taken as a whole).  Furthermore, the Lender is hereby granted relief from the automatic stay to take steps to perfect the DIP Liens, as described below.

6.       <u>Postpetition Lien Perfection</u>.

(i)       This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect the DIP Liens or to entitle the DIP Liens to the priorities granted herein.  Notwithstanding the foregoing, the Lender may, at its discretion, file financing statements, without notice to the Debtors, with all appropriate jurisdictions to perfect or protect the Lender's interest or rights hereunder, including a notice that any disposition of the Collateral, by either of the Debtors or any other Person, shall be deemed to violate the rights of the Lender under the Uniform Commercial Code.  Such financing statements may indicate the Collateral as "all assets of the Debtors" or

---

[4] "**Committee**" shall mean the unsecured creditors' committee selected and appointed by the United States Trustee's Office for the District of Delaware, if any.  For the sake of clarity, no Committee has been selected or appointed as of the entry of this Interim Order.

words of similar effect, or as being of an equal or lesser scope, or with greater detail, all in the Lender's discretion, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and any and all of such financing statements, mortgages, notices of lien and other documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of the Cases.

(ii)  The Debtors shall from time to time execute and deliver to the Lender, at the request of the Lender, all financing statements and other documents that the Lender may reasonably request, in form satisfactory to the Lender, to perfect and continue the perfection of the Lender's security interests in the Collateral and in order to fully consummate all of the transactions contemplated under the DIP Documents.

7.  <u>Carve Out</u>.  Subject and subordinate to the Carve-Out (as defined below) in all respects, the DIP Obligations shall constitute allowed superpriority administrative expense claims and shall have priority over all other allowed Chapter 11 and Chapter 7 administrative expense claims, including expenses of a chapter 11 and chapter 7 trustee, under sections 364(c)(1), 503(b), 507(a)(2) and 507(d) of the Bankruptcy Code.  "<u>Carve-Out</u>" means (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code (without regard to the notice set forth in (ii) below) (the "<u>U.S. Trustee Fees</u>"); (ii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise by the Court, all allowed unpaid fees (including, without limitation, transaction fees paid upon the closing of the respective transaction but excluding success fees) and expenses (collectively, the "<u>Professional Fees</u>") accrued or incurred by persons or firms retained by the Debtors pursuant to sections 327, 328, or 363 of the Bankruptcy Code (the "<u>Professionals</u>") and any Committee  professionals (the "<u>Committee Professionals</u>" and, together with the Professionals, the "<u>Professional Persons</u>") employed by the Committee, if the Committee professional is appointed in the Chapter 11 Case pursuant to sections 328 or 1103 of the

17

Bankruptcy Code at any time on or prior to delivery by or on behalf of the Lender of a Carve-Out Trigger Notice (as defined herein), whether allowed by the Court prior to or after delivery of a Carve-Out Trigger Notice; and (iii) the Professional Fees in an aggregate amount not to exceed $100,000 for amounts incurred after the date of delivery of the Carve-Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise by the Court (the amounts set forth in this clause (iii) being the "Post-Carve-Out Trigger Notice Cap"). "Carve-Out Trigger Notice" means a written notice delivered by email (or other electronic means) to the Debtors and their counsel, the United States Trustee, and counsel to the Committee, which notice may be delivered following the occurrence and during the continuation of an Event Of Default under the DIP Documents, stating that the Post-Carve-Out Trigger Notice Cap has been invoked. No portion of the Carve-Out, or proceeds of the DIP Credit Facility or any other amounts may be used for the payment of the fees and expenses of any person incurred in challenging, or in relation to the challenge of, (i) the liens and/or claims of the Lender, or the initiation or prosecution of any claim or action against the Lender, including, without limitation, any claim under Chapter 5 of the Bankruptcy Code, and any other federal, state or foreign law, in respect of the DIP Documents or (ii) any claims or causes of actions against the Lender under the DIP Documents, their advisors, professionals, agents and sub-agents, including formal discovery proceedings in anticipation thereof.

8.      Payment of Compensation.  Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of the Debtors or any Committee or affect the right of any party in interest to object to the allowance and payment of such fees and expenses.

9.      Adequate Protection for Prepetition Secured Lenders. Subject to the Challenge Period, as adequate protection in respect of, and as consideration for any Diminution resulting from any of the incurrence and payment of the DIP Obligations, the use of Cash Collateral, the use of other Prepetition Collateral, the granting of the DIP Liens and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, the Prepetition Secured Lender is hereby granted the following adequate protection:

18

(i)    <u>Adequate Protection Liens</u>. The Prepetition Secured Lender is hereby granted (effective and perfected by operation of law immediately upon entry of this Interim Order and without the necessity of execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements, account control agreements and other agreements, filings or instruments) valid, perfected, postpetition security interests and liens (the "<u>Adequate Protection Liens</u>") in and on all of the DIP Collateral, with a priority subject and subordinate only to the DIP Liens and the Carve-Out.

(ii)    <u>506(c) and 552(b) Waivers</u>. Subject to the entry of the Final Order, the Prepetition Secured Lender's consent to use of Cash Collateral and Prepetition Collateral under this Interim Order and the Debtors' right to use Cash Collateral and Prepetition Collateral: (i) is in lieu of any section 506(c) claim, payment or priority for the costs or expenses of the administration of any of these Cases; and (ii) is granted as consideration for (among other things) the waiver of the exceptions provided in sections 552(b)(1) and (2) of the Bankruptcy Code, which exceptions are hereby waived.

10.    <u>Collateral Rights</u>.  In connection with any sale or disposition of all or any portion of the Collateral, including in each case pursuant to Sections 9-610 or 9-620 of the Uniform Commercial Code, at any sale thereof conducted under the provisions of the Bankruptcy Code, including section 363 of the Bankruptcy Code or as part of restructuring plan subject to confirmation under section 1129 of the Bankruptcy Code, or at any sale or foreclosure conducted by Serene or its affiliate, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise, in each case in accordance with applicable law and, with respect to any credit bid, section 363(k) of the Bankruptcy Code, the Debtors give the Prepetition Secured Lender (subject to entry of a final order) the power and right to "credit bid" the full amount of all obligations owing under the GHP Loan, in order to purchase (either directly or through one or more acquisition vehicles) all or any portion of the Collateral.

19

11.    <u>Maturity Date</u>.  The maturity date (the "<u>Maturity Date</u>") of the DIP Agreement is the earlier of (i) the closing of a sale of Debtors' assets pursuant to section 363 of the Bankruptcy Code to any purchaser other than Serene or its affiliate;, (ii) the effective date of any chapter 11 plan proposed by the Debtors, (iii) entry of an order by the Bankruptcy Court converting the Cases to a proceeding or proceedings under Chapter 7 of the Bankruptcy Code, (iv) entry of a final order by the Bankruptcy Court dismissing the Cases, or (v) the date of termination of the DIP Credit Facility and the acceleration of any outstanding extensions of credit under the Loan in accordance with the terms of the DIP Agreement.

12.    <u>Sale Covenants.</u>  To effectuate the sale process for all, or substantially all, of the Debtors' assets, the Debtors have agreed to, and are authorized to, timely satisfy each of the Milestones set forth on Paragraph 6.14 of the DIP Credit Agreement.  The Debtors, the Lender, and GHP, upon written agreement between the parties, may agree to amend or otherwise modify such Milestones from time to time, without the need of any further notice, hearing, or order of this Court (other than a notice of such amendment or modification to be filed with this Court).

13.    <u>Events of Default</u>.  The occurrence of an "Event of Default" pursuant to Section 8 of the DIP Agreement shall constitute an event of default under this Interim Order, unless expressly waived in writing in accordance with the DIP Documents (collectively, the "<u>Event of Default</u>").

14.    <u>Rights and Remedies Upon Event of Default</u>.

(a)    If the Debtors, upon thirty (30) days prior written notice and opportunity to cure fail or neglect to perform or observe any other material term, provision, condition, covenant contained in the DIP Agreement, in any of the DIP Documents, or in any other present or future agreement between the Debtors and the Lender and as to any default under such other term, provision, condition or covenant that can be cured, has failed to cure such default within ten (10) calendar days after the Debtors receive notice thereof or any officer of the Debtors becomes aware thereof; provided, however, that if the default cannot by its nature be cured within the ten (10) calendar day period or cannot after diligent attempts by the Debtors be cured within such ten (10)

calendar day period, and such default is likely to be cured within a reasonable time, then the

Debtors shall have an additional reasonable period (which shall not in any case exceed twenty (20)

calendar days) to attempt to cure such default, and within such reasonable time period the failure

to have cured such default shall not be deemed an Event of Default but no Credit Extensions will

be made.

        (b)      Upon the occurrence and during the continuance of an Event of Default, the

Lender may, at its election, without notice of its election and without demand, do any one or more

of the following, all of which are authorized by the Debtors:

        (i)  The Lender may seek an order from the Bankruptcy Court on a shortened time basis to do any of the following: (i) terminate the DIP Loan Facility with respect to further Advances; (ii) declare all or any portion of the Obligations, including all or any portion of the Loan to be forthwith due and payable, all without presentment, demand, protest or further notice of any kind, all of which are expressly waived by the Debtors; or (iii) exercise any rights and remedies provided to Lender under the Loan Documents or at law or equity, including all remedies provided under the Bankruptcy Code; and pursuant to the Interim Order and the Final Order, the automatic stay of Section 362 of the Bankruptcy Code shall be modified and vacated to permit Lender to exercise its remedies under the DIP Agreement and the Loan Documents, without further notice, application or motion to, hearing before, or order from, the Bankruptcy Court, provided, however, notwithstanding anything to the contrary contained herein, that Lender shall be permitted to exercise any remedy in the nature of a liquidation of, or foreclosure on, any interest of Borrower in the Collateral only upon five (5) Business Days' prior written notice to Borrower, counsel approved by the Bankruptcy Court for the Committee and the U.S. Trustee and as set forth in this Interim Order.

        (ii)  <u>Waivers by the Debtors</u>.  Except as otherwise provided for in the DIP Agreement or by applicable law, the Debtors waive:  (a) presentment, demand and protest and notice of presentment, dishonor, notice of intent to accelerate, notice of acceleration, protest, default, nonpayment, maturity, release, compromise, settlement, extension or renewal of any or all commercial paper, accounts, contract rights, documents, instruments, chattel paper and guaranties at any time held by the Lender on which the Debtors may in any way be liable, and hereby ratifies and confirms whatever the Lender may do in this regard, (b) all rights to notice and a hearing prior to the Lender's taking possession or control of, or to the Lender's replevy, attachment or levy upon, the Collateral or any bond or security that might be required by any court prior to allowing the Lender to exercise any of its remedies, and (c) the benefit of all valuation, appraisal, marshaling and exemption laws.   Subsections (b) and (c) abover are subject to entry of a Final Order of this Court.

(c)       Nothing included herein shall prejudice, impair, or otherwise affect the Lender's right to seek any other or supplemental relief in respect of the rights of the Lender, as provided in the DIP Agreement or otherwise.

15.    Proofs of Claim.  Neither the Lender nor the Prepetition Secured Lender shall be required to file proofs of claim in any of the Cases or Successor Cases for any claim allowed herein. The Debtors' Acknowledgments and Stipulations set forth in Paragraph D of this Interim Order shall be deemed to constitute a timely filed proof of claim for the Prepetition Secured Lender upon approval of this Interim Order. Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of these Cases or Successor Cases to the contrary, the Prepetition Secured Lender is hereby authorized and entitled, in their sole discretion, but not required, to file (and amend and/or supplement as it sees fit) a proof of claim and/or proofs of claim in each of these Cases or Successor Cases for any claim allowed herein.

16.    Other Rights and Obligations.

(a)       Good Faith Under Section 364(e) of the Bankruptcy Code.  The Lender has acted in good faith in connection with negotiating the DIP Documents, and the loans to be made pursuant thereto, and their reliance on this Interim Order is in good faith.  Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, and in accordance with section 364(e) of the Bankruptcy Code and Bankruptcy Rules 4001(b) and (c), in the event any or all of the provisions of this Interim Order are hereafter reversed, modified amended or vacated by a subsequent order of this or any other Court, the Lender is entitled to all of the benefits and protections provided in section 364(e) of the Bankruptcy Code.  Any reversal, modification, amendment or vacating of this Interim Order shall not affect the validity and enforceability of any Advances made pursuant to this Interim Order or the liens or priority authorized or created hereby to the extent provided in Section 364(e) of the Bankruptcy Code.

(b)    <u>Binding Effect</u>.  The DIP Liens and the Adequate Protection Liens and other rights and remedies granted under this Interim Order to the Lender shall continue in these Cases and any Successor Case(s), and shall be valid and enforceable against any trustee appointed in any or all of the Debtors' Cases and upon the dismissal of any or all of the Debtors' Cases, or in any Successor Case(s), and such liens and security interests shall maintain their first priority as provided in this Interim Order until all the DIP Obligations and the Prepetition Obligations have been indefeasibly paid in full in cash and the Lender's commitments have been terminated in accordance with the DIP Documents and this Interim Order.

(c)    <u>The Lender's Liability for Collateral.</u>  So long as the Lender complies with reasonable commercial lending practices, the Lender shall not in any way or manner be liable or responsible for:  (a) the safekeeping of the Collateral; (b) any loss or damage thereto occurring or arising in any manner or fashion from any cause; (c) any diminution in the value thereof; or (d) any act or default of any carrier, warehouseman, bailee, forwarding agency, or other person whomsoever.  All risk of loss, damage or destruction of the Collateral shall be borne by the Debtors.

(d)    <u>Remedies Cumulative</u>.  The Lender's rights and remedies under the DIP Agreement, the DIP Documents, and all other agreements shall be cumulative.  The Lender shall have all other rights and remedies not inconsistent herewith as provided under the California Uniform Commercial Code, by law, or in equity, subject to the requirements of the Bankruptcy Code.  No exercise by the Lender of one right or remedy shall be deemed an election, and no waiver by the Lender of any Event of Default on the Debtors' part shall be deemed a continuing waiver.  No delay by the Lender shall constitute a waiver, election, or acquiescence by it.  No

waiver by the Lender shall be effective unless made in a written document signed on behalf of the Lender and then shall be effective only in the instance and for the purpose for which it was given.

(e)     Demand; Protest.  The Debtors waive demand, protest, notice of protest, notice of default or dishonor, notice of payment and nonpayment, notice of any default, nonpayment at maturity, release, compromise, settlement, extension, or renewal of accounts, documents, instruments, chattel paper, and guarantees at any time held by the Lender on which the Debtors may in any way be liable.

(f)     Borrower Liability.  Each of the Debtors shall be jointly and severally obligated to repay all Credit Extensions made under the DIP Agreement, regardless of which of the Debtors actually receives said Credit Extension, as if each of the Debtors directly received all Credit Extensions.  Each of the Debtors waive (i) any suretyship defenses available to it under the California Uniform Commercial Code or any other applicable law, including, without limitation, the benefit of California Civil Code Section 2815 permitting revocation as to future transactions and the benefit of California Civil Code Sections 1432, 2809, 2810, 2819, 2839, 2845, 2847, 2848, 2849, 2850, and 2899 and 3433, and (ii) any right to require the Lender to:  (1) proceed against the Debtors or any other person; (2) proceed against or exhaust any security; or (3) pursue any other remedy.  The Lender may exercise or not exercise any right or remedy it has against any of the Debtors or any security they hold (including the right to foreclose by judicial or non-judicial sale) without affecting any of the Debtors' liability.  Subject to entry of a Final Order of this Court, and notwithstanding any other provision of the DIP Agreement or other related document, each Debtor irrevocably waives all rights that it may have at law or in equity (including, without limitation, any law subrogating the Debtors to the rights of the Lender under the DIP Agreement) to seek contribution, indemnification or any other form of reimbursement from any other Debtor, or any

24

other Person now or hereafter primarily or secondarily liable for any of the Obligations, for any payment made by the Debtors with respect to the Obligations in connection with the DIP Agreement or otherwise and all rights that it might have to benefit from, or to participate in, any security for the Obligations as a result of any payment made by the Debtors with respect to the Obligations in connection with the DIP Agreement or otherwise.  Subject to entry of a Final Order of this Court, any agreement providing for indemnification, reimbursement or any other arrangement prohibited under Section 9.8 of the DIP Agreement shall be null and void.  If any payment is made to a Debtor in contravention of Section 9.8 of the DIP Agreement, subject to entry of a Final Order of this Court, such Debtor shall hold such payment in trust for the Lender and such payment shall be promptly delivered to the Lender for application to the Obligations, whether matured or unmatured.

(g)     Protective Payments. If the Debtors fail to obtain the insurance called for by Section 6.6 of the DIP Agreement or fail to pay any premium thereon or fails to pay any other amount which the Debtors are obligated to pay under the DIP Agreement or any other DIP Document or which may be required to preserve the Collateral, the Lender may obtain such insurance or make such payment, and all amounts so paid by the Lender are immediately due and payable, bearing interest at the then highest rate applicable to the Obligations, and secured by the Collateral.  The Lender will make reasonable efforts to provide the Debtors with notice of the Lender obtaining such insurance at the time it is obtained or within a reasonable time thereafter. No payments by the Lender are deemed an agreement to make similar payments in the future or the Lender's waiver of any Event of Default.

(h)     Amendments in Writing, Integration.  Except as expressly set forth in the DIP Agreement, all amendments to or terminations of the DIP Agreement or the DIP Documents

must be in writing signed by each of the parties thereto.  All prior agreements, understandings, representations, warranties, and negotiations between any of the parties thereto with respect to the subject matter of the DIP Agreement and the DIP Documents, if any, are merged into the DIP Agreement and the DIP Documents.

17. <u>Release</u>.   The release, discharge, waivers, settlements, compromises, and agreements set forth in this Paragraph 17 and the Debtors' Acknowledgments and Stipulations set forth in Paragraph D of this Interim Order shall be deemed effective upon entry of the Interim Order, subject only to the rights set forth in Paragraph 19 below. The Debtors forever and irrevocably release, discharge, and acquit each of the Lender, the Prepetition Secured Lender, and their affiliates and predecessors in interest, and their respective former, current or future officers, employees, directors, agents, representatives, owners, members, partners, advisors, legal advisors, shareholders, managers, consultants, accountants, and attorneys (collectively, the "<u>Lender Releasees</u>"), of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, obligations, and all claims and causes of action under chapter 5 of the Bankruptcy Code (with the exception of Section 549), as in anyway related to the Prepetition Loan Agreement or the Prepetition Obligation.

18. <u>Indemnity</u>. Each Lender has acted in good faith.  Accordingly, the Debtors shall defend, indemnify and hold harmless Lender and its officers, employees, and agents (each an "<u>Indemnified Party</u>") against:  (a) all obligations, demands, claims, and liabilities claimed or asserted by any other party in connection with the transactions contemplated by this Agreement; and (b) all losses in any way suffered, incurred, or paid by Lender as a result of or in any way arising out of, following, or consequential to transactions between Lender and Borrower whether under this Agreement, the DIP Loan Facility, the Cases, or otherwise (including without limitation reasonable attorneys' fees and expenses), except for losses caused by an Indemnified Party's gross negligence or willful misconduct.  This Section 18 shall not apply to Taxes.

19.    <u>Reservation of Certain Third Party Rights and Bar of Challenges and Claims</u>. The releases set forth in Paragraph 17 above and the Debtors' Acknowledgments and Stipulations set forth in Paragraph D of this Interim Order shall be binding upon the Debtors upon entry of this Interim Order.  In addition, such releases and stipulations shall be binding upon each other party in interest, including the Committee, if any, unless a party in interest having standing, first, commences, (x) within sixty (60) calendar days from date of the formation of a Committee for actions brought by a Committee, or (y) seventy-five (75) calendar days following the date of entry of this Interim Order for any party other than a Committee (such time period established by clauses (x) and (y), shall be referred to as the "<u>Challenge Period</u>," and the date that is the next calendar day after the termination of the Challenge Period in the event that either (i) no Challenge (as defined below) is properly raised during the Challenge Period or (ii) with respect only to those parties who properly and timely file a Challenge and only for the matters specifically set forth in such Challenge, such Challenge is fully and finally adjudicated, shall be referred to as the "<u>Challenge Period Termination Date</u>"), (A) a contested matter, adversary proceeding, or other action or claim (as defined in the Bankruptcy Code) challenging or otherwise objecting to the releases set forth in Paragraph 17 above or the Debtors' Acknowledgments and Stipulations set forth in Paragraph D of this Interim Order or (B) a contested matter, adversary proceeding, or other action or claim (as defined in the Bankruptcy Code) against any Lender Releasee relating to any pre-Petition Date act, omission or aspect of the relationship between such Lender Releasee or Prepetition Secured Lender and the Debtors ((A) and (B) being, collectively, the "<u>Challenges</u>" and, each individually, a "<u>Challenge</u>"), and, second, obtains a final, non-appealable order in favor of such party in interest sustaining any such Challenge in any such timely-filed contested matter, adversary proceeding, or other action. Upon the Challenge Period Termination Date and for all purposes in these Cases and any Successor Case(s), (i) any and all such Challenges by any party in interest shall be deemed to be forever released, waived, and barred and (ii) the releases in Paragraph 17 above and the Debtors' Acknowledgments and Stipulations set forth in Paragraph D of this Interim Order shall be binding on all parties in interest, including any Committee.  If the

Cases convert to a Chapter 7, or if a Chapter 11 trustee is appointed, before the end of the Challenge Period, then the Challenge Period shall be extended for the Chapter 7 trustee to 75 days after conversion, or to the Chapter 11 trustee to 75 days after his/her appointment.  For the avoidance of doubt, any Chapter 7 or 11 trustee appointed or elected in these Cases during the Challenge Periodshall, until the expiration of the periods provided herein for asserting lender claims and thereafter for the duration of any adversary proceeding or contested matter commenced pursuant to the Challenge Period (whether commenced by such trustee or commenced by any other party in interest on behalf of the Debtors' estates), be deemed to be a party other than the Debtors and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgments, admissions, confirmations, stipulations, releases and waivers of the Debtors in this Order.

20.    <u>Restrictions on Use of Funds</u>. Notwithstanding anything in this Interim Order or the DIP Documents to the contrary, without the express written consent of the Lender, and pursuant to further order of the Court, no proceeds of the DIP Credit Facility, any DIP Collateral or Prepetition Collateral (including, without limitation, Cash Collateral) or any portion of the Carve-Out may be used to pay any claims for services rendered by any professionals retained by the Debtors, any creditor or party in interest, any Committee, any trustee appointed under these Cases or any Successor Case(s), or any other party to (a) request authorization to obtain postpetition loans or other financial accommodations pursuant to section 364 of the Bankruptcy Code or otherwise, other than from the Lender, unless the proceeds of such loans or accommodations are or will be sufficient, and will be used, to indefeasibly pay in full in cash all DIP Obligations, or (b) investigate (except as set forth in this paragraph below), assert, join, commence, support, prosecute, or defend any Challenge or other action or claim, counter-claim, cause of action, proceeding, application, motion, objection, defense, or other adversary proceeding or contested matter seeking any order, judgment, determination or similar relief against, or adverse to the interests of the Lender or any other Lender Releasee with respect to any transaction, occurrence, omission, or action including, without limitation, (i) any actions under chapter 5 of the Bankruptcy Code, (ii) any action relating

28

to any act, omission or aspect of the relationship between or among any of the Lender Releasees, on the one hand, and either of the Debtors, on the other, (iii) any action with respect to the validity, extent, perfection, and enforceability of the DIP Obligations, the Prepetition Obligations, or the validity, extent, priority, perfection, and enforceability of the DIP Liens, the Prepetition Liens or the Adequate Protection Liens, (iv) any action seeking to invalidate, set aside, avoid or subordinate, in whole or in part, the DIP Obligations, the DIP Liens, the Prepetition Obligations, the Prepetition Liens, or the Adequate Protection Liens, (v) any action that has the effect of preventing, hindering or delaying (whether directly or indirectly) the Lender in respect of the enforcement of the DIP Liens, or (vi) any action for lender liability claims or subordination claims, (c) subject to authority provided to the Debtors pursuant to the DIP Documents, pay any claim (as defined in the Bankruptcy Code) of a prepetition creditor (as defined in the Bankruptcy Code) if the Debtors have received a written objection to such payment from the Lender, and/or (d) use or seek to use Cash Collateral or sell or otherwise dispose of DIP Collateral, unless otherwise permitted hereby or by the DIP Documents, without the express written consent of the applicable Lender.  Notwithstanding the foregoing, up to $10,000 in the aggregate of the DIP Credit Facility, DIP Collateral, Cash Collateral and Carve-Out may be used by a Committee during the Challenge Period to investigate claims against the Lender Releasees, and any amount spent in excess of such amount shall not constitute administrative expenses of the Cases and shall be automatically disallowed.

21.    <u>No Marshalling</u>.  From and after the entry of the Final Order, the Lender (and after payment in full of the DIP Obligations) shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral. Without limiting the generality of the immediately preceding sentence, from and after the entry of the Final Order, no party (other than the Lender and after payment in full of the DIP Obligations) shall be entitled, directly or indirectly, to direct the exercise of remedies or seek (whether by order of this Court or otherwise) to marshal or otherwise control the disposition of the DIP Collateral or the Prepetition Collateral (as applicable) after an Event of Default under

the DIP Documents.

22.    <u>Survival of Interim Order and Other Matters</u>.  The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (i) confirming any Plan in the Cases, (ii) converting any of the Cases to a case under chapter 7 of the Bankruptcy Code or a Successor Case, (iii) to the extent authorized by applicable law, dismissing the Cases, (iv) withdrawing the reference of the Cases from this Court, or (v) providing for abstention from handling or retaining of jurisdiction of the Cases in this Court and this Interim Order.  The terms and provisions of this Interim Order shall be binding upon the Debtors and the Lender, the Prepetition Secured Lender and each of its respective successors and assigns, and shall inure to the benefit of the Debtors and the Lender, the  Prepetition Secured Lender and each of its respective successors and assigns including, without limitation, any trustee, examiner with expanded powers, responsible officer, estate administrator or representative, or similar person appointed or elected in a case for any Debtor under any chapter of the Bankruptcy Code, including any Successor Case. The terms and provisions of this Interim Order shall also be binding on all of the Debtors' creditors, equity holders, and all other parties in interest, including, but not limited to a trustee appointed or elected under chapter 7 or chapter 11 of the Bankruptcy Code.

(i)    <u>Inconsistency</u>.  In the event of any inconsistency between the terms and conditions of the DIP Documents and of this Interim Order, the provisions of this Interim Order shall govern and control.

(ii)    <u>Enforceability</u>.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry of this Interim Order. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, 9024, or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or

effectiveness of this Interim Order.  The rights of all parties in interest to object to the terms of the Final Order and any of the DIP Documents at the Final Hearing are expressly reserved.

(iii)    <u>Objections Overruled</u>.  All objections to the Motion to the extent not withdrawn or resolved, are hereby overruled on an interim basis.

23.    <u>Final Hearing</u>.

(i)    The Final Hearing to consider entry of the Final Order and final approval of the DIP Credit Facility is scheduled for November 4, 2020 at 1:00 p.m. prevailing Eastern Time at the United States Bankruptcy Court for the District of Delaware.  If no objections to the relief sought in the Motion are filed and served in accordance with this Interim Order, no Final Hearing may be held, and a separate Final Order may be presented by the Debtors and entered by this Court.

(ii)    Within two (2) business days following entry of this Interim Order, the Debtors shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final Hearing (the "<u>Final Hearing Notice</u>"), together with copies of this Interim Order, the proposed Final Order and the Motion, on: (a) the parties having been given notice of the Interim Hearing; (b) any party which has filed prior to such date a request for notices with this Court; and (c) counsel for the Committee, if any.  The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Bankruptcy Court and served upon the following: (a) counsel to the Debtors, Cozen O'Connor, Attn: Thomas J. Francella, Jr. (tfrancella@cozen.com), Thomas Horan (thoran@cozen.com), Alan J. Friedman (afriedman@shulmanbastian.com), and Melissa Davis Lowe (mlowe@shulmanbastian.com); (b) any committee; (c) counsel to GHP, Sidley Austin LLP, Attn: Matthew A. Clemente (mclemente@sidley.com) and William Curtin (wcurtin@sidley.com); (d) counsel to the Lender and Prepetition Secured Lender, (i) Michelson Law Group, Attn Randy Michelson (randy.michelson@michelsonlawgroup.com) and Karl Kuhn

(karl.kuhn@michelsonlawgroup.com) and (ii) Morris, Nichols, Arsht & Tunnell LLP, Attn: Robert J. Dehney (rdehney@mnat.com), Joseph C. Barsalona II (jbarsalona@mnat.com), and Eric Moats (emoats@mnat.com); (e) the UST, Attn: Benjamin A. Hackman (Benjamin.A.Hackman@usdoj.gov), and shall be filed with the Clerk of the United States Bankruptcy Court for the District of Delaware, so as to allow actual receipt of the foregoing no later than October 28, 2020 at 5:00 p.m. prevailing Eastern Time.  Notwithstanding the terms of this Interim Order, this Court is not precluded from entering a Final Order containing provisions that are inconsistent with, or contrary to any of the terms in this Interim Order, subject to the protections under section 364(e) and the rights of the Lender to terminate the DIP Agreement if such Final Order is not acceptable.  In the event this Court modifies any of the provisions of this Interim Order or the DIP Documents following such further hearing, such modifications shall not affect the rights and priorities of the Lender pursuant to this Interim Order with respect to the Collateral, and any portion of the DIP Obligations which arises or is incurred, advanced or paid prior to such modifications (or otherwise arising prior to such modifications), and this Interim Order shall remain in full force and effect except as specifically amended or modified at such Final Hearing.

(iii)   Priority of Terms. To the extent of any conflict between or among (a) the express terms or provisions of any of the DIP Documents, the Motion or any other agreements, on the one hand, and (b) the terms and provisions of this Interim Order, on the other hand, unless such term or provision herein is phrased in terms of "as defined in" "as set forth in" or "as limited by" or "as more fully described in" the DIP Documents (or words of similar import), the terms and provisions of this Interim Order shall govern.

(iv)    <u>Retention of Jurisdiction</u>.    This Court has and will retain jurisdiction to enforce this Interim Order.