**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE:<br><br>YOGAWORKS INC., a Delaware corporation, *et al.*<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 20-12599 (KBO)<br><br>(Jointly Administered) |

**DECLARATION OF ADAM MEISLIK IN SUPPORT OF DEBTORS' MOTION FOR ENTRY OF AN ORDER: (I) (A) APPROVING BIDDING PROCEDURES AND PROTECTIONS IN CONNECTION WITH A SALE OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; (B) SCHEDULING AN AUCTION AND SALE HEARING; (C) APPROVING THE FORM AND MANNER OF NOTICE THEREOF; (D) APPROVING PROCEDURES RELATED TO ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND LEASES; AND (E) GRANTING RELATED RELIEF; AND (II) (A) AUTHORIZING SALE OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS PURSUANT TO SUCCESSFUL BIDDER(S)' ASSET PURCHASE AGREEMENT, FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; AND (B) APPROVING ASSUMPTION AND ASSIGNMENT OF <u>CERTAIN EXECUTORY CONTRACTS AND LEASES</u>**

I, Adam Meislik, declare as follows:

1.     Except as otherwise stated, I have personal knowledge of the facts set forth in this declaration and, if called as a witness, could and would testify competently to such facts under oath. I am submitting this declaration in support of YogaWorks, Inc., a Delaware corporation ("<u>YogaWorks</u>") and Yoga Works, Inc., a California corporation ("<u>Yoga Works</u>" and collectively

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number is (1) YogaWorks, Inc., a Delaware corporation (9105); and (2) Yoga Works, Inc., a California corporation (0457).

the "Debtors") Motion for Order: (I) (A) Approving Bidding Procedures and Protections in Connection With a Sale of Substantially All of Debtors' Assets Free and Clear of Liens, Claims, Encumbrances and Interests; (B) Scheduling an Auction and Sale Hearing; (C) Approving the Form and Manner of Notice Thereof; (D) Approving Procedures Related to Assumption and Assignment of Certain Executory Contracts and Leases; and (E) Granting Related Relief; and (II) (A) Authorizing Sale of Substantially All of Debtors' Assets Pursuant to Successful Bidder(s)' Asset Purchase Agreement, Free and Clear of Liens, Claims, Encumbrances and Other Interests; and (B) Approving Assumption and Assignment of Certain Executory Contracts and Leases ("Sale Motion"). All capitalized terms not otherwise defined herein shall have the meaning ascribed in the Sale Motion.

    2.    I am a member of Force Ten Partners LLC ("Force 10"), with headquarters offices located at 20341 SW Birch Street, Suite 220, Newport Beach, California. Force 10 is an advisory firm with deep domain knowledge in financial and operational corporate restructuring, valuation, forensic accounting, and complex litigation support. Force 10 serves middle-market companies as well as their creditors, stakeholders, and professionals by providing turnaround-management services (CRO), financial advisory services, expert witness support, and investment banking and M&A advisory services. Further information on Force 10 and on my background is set forth in my Declaration filed on October 16, 2020 [D.I. 21].

    3.    I am the individual at Force 10 with primary responsibility for Force 10's aforementioned engagement with the Debtors. References to actions taken by "Force 10" within this Declaration include actions I took in conjunction with other members of Force 10 that I manage and supervise in connection with the financial advisor and investment banking services rendered to the Debtors.

4. As discussed in detail in my prior Declaration, Force 10 was engaged by the Debtors to seek a resolution to the Debtors' capital deficiency and impending defaults under the Debtors' senior secured indebtedness, including a sale through the Chapter 11 process. Force 10 solicited and spoke to multiple different potential buyers as detailed in my prior Declaration.

5. <u>Stalking Horse Bidder</u>. Serene Investment Management, LLC ("<u>Serene</u>") and its affiliates, including YogaWorks Investment Fund LLC ("<u>YWIF</u>" or the "<u>Stalking Horse Bidder</u>"), began conducting due diligence in late August 2020. Its efforts involved the review of financial and operational information from the Debtors, conference calls with the Debtors' management, and multiple discussions with Force 10.

6. On September 11, 2020, Serene ultimately submitted an initial proposal for $3,500,000 to immediately acquire the Debtors' senior secured debt for the ability to credit bid for the Debtors' assets, and then provide post-petition financing with the balance of the proceeds. Serene left it to the Debtors and the holder of the senior secured debt to decide the loan purchase price and the amount of debtor in possession financing based on the Debtors' post-petition financing requirements.

7. Through a series of negotiations, on or about September 16, 2020, Serene counter-offered an aggregate of $3,850,000 and agreed to the general terms the Debtors sought for post-petition financing, including no interest and no fees. The Debtors and GHP accepted this term sheet and executed it on September 16, 2020, a copy of which was attached to my prior Declaration.

8. <u>G4</u>. On October 3, 2020, G4 Development Group ("<u>G4</u>") made an unsolicited offer to the Debtors and the then holder of the senior secured debt, Great Hills Partners ("<u>GHP</u>"), for an aggregate of $4,850,000. G4 was introduced to the opportunity by Brian Cooper, CEO of the

Debtors, and I understand Mr. Cooper was participating as an investor in G4's bid. $4,850,000 was offered because it is $1 million more than the Serene $3,850,000 transaction. The Serene $3,850,000 term sheet contained a form exclusivity whereby GHP and the Debtors could accept an offer of at least $1,000,000 more ($4,850,000) by another party if Serene had the opportunity to match and continue bidding.

9. Through a series of additional negotiations, the Stalking Horse Bidder further increased its bid to $4,150,000, and it was accepted over G4's bid of $4,850,000 (the "Final Stalking Horse Transaction").

10. Although the aggregate price offered by G4 was $700,000 higher, it would only inure to the benefit of GHP and no other creditor, given the post-petition budget would be the same, thus requiring the same amount of post-petition financing -- $3,350,000.

11. In addition to the price received by GHP and the money available to the Debtors for post-petition financing, the Final Stalking Horse Transaction has other salient points that benefit the Debtors, including no-interest and no-fees on the post-petition financing transaction and "down the line" bid procedures.

12. Thereafter, the Stalking Horse Bidder increased its purchase price to $5,000,000 as stated in the Sale Motion. Pursuant to the terms of the Asset Purchase Agreement, the Stalking Horse Bidder is entitled to a break-up fee (the "Break-up Fee") of $150,000 in the event it is not the Successful Bidder. I believe the Break-up Fee is necessary to preserve the value of the Debtors' estates because it will enable the Debtors to secure an adequate floor for the Purchased Assets and to therefore insist that competing bids be materially higher or otherwise better than the Agreement. Moreover, the Break-up Fee was the result of good faith, arms' length negotiations between the

Debtors and the Stalking Horse Bidder (an unaffiliated third-party to the Debtors) and after a fully vetted sale process from the efforts of the Debtors, Guggenheim, and Force 10.

13. Further, the Stalking Horse Bidder would not agree to act as a "stalking horse" without the Break-up Fee given the substantial time and expense that it has incurred in connection with entering into definitive documentation and the risk that it will be outbid at the Auction.

14. Further, the bid of the Stalking Horse Bidder attracts additional bidders because, among other things, additional bidders will be able to save considerable time and expense because they can use many of the documents that the Stalking Horse Bidder heavily negotiated, including, among other things, the Agreement and the schedules thereto, in making their bid. In sum, if all or a portion of the Purchased Assets are sold to a Successful Bidder other than the Stalking Horse Bidder, the sale likely will be the result of the Stalking Horse Bidder's crucial role as an initial bidder generating interest in the Purchased Assets and establishing a minimum acceptable price and offer against which other parties can bid.

15. Based upon the aforementioned, and for the reasons stated in the Sale Motion and proposed order, I believe the Debtors have demonstrated good and sufficient reasons: (1) for the approval of the Bidding Procedures; (2) to set the Auction and the Sale Hearing and approve the form and manner of notice of the Auction and the Sale Hearing; (3) for approval of the procedures for the assumption and assignment of executory contracts and unexpired leases, including notice of proposed cure costs; and (4) for granting the Break-up Fee as provided in the Agreement and in the Bidding Procedures Order.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Dated: October 21, 2020  
Irvine California

Adam Meislik