## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| YOGAWORKS, INC., *et al.*[1] | Case No. 20-12599 (KBO) |
| Debtors. | (Jointly Administered) |

## JOINT CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

**COZEN O'CONNOR**
Thomas J. Francella, Jr. (DE Bar No. 3835)
Thomas M. Horan, Esq. (DE Bar No. 4641)
1201 North Market Street, Suite 1001
Wilmington, DE 19801
Telephone:  (302) 295-2000
Facsimile:  (302) 250-4495
E-mail: tfrancella@cozen.com
E-mail: thoran@cozen.com

and

**SHULMAN BASTIAN FRIEDMAN & BUI LLP**
Alan J. Friedman, Esq.
Melissa Davis Lowe, Esq.
100 Spectrum Center Drive; Suite 600
Irvine, CA 92618
Telephone:  (949) 340-3400
Facsimile:  (949) 340-3000
E-mail: afriedman@shulmanbastian.com
E-mail: mlowe@shulmanbastian.com

*Counsel to the Debtors and Debtors in Possession*

**MORRIS JAMES LLP**
Eric J. Monzo, Esq. (DE Bar No. 5214)
Brya M. Keilson, Esq. (DE Bar No. 4643)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
E-mail: emonzo@morrisjames.com
E-mail: bkeilson@morrisjames.com

and

**KILPATRICK TOWNSEND & STOCKTON LLP**
David M. Posner, Esq. (admitted *pro hac vice*)
Gianfranco Finizio, Esq. (admitted *pro hac vice*)
1114 Avenue of the Americas
New York, NY  10036-7703
Telephone: (212) 775-8840
Facsimile: (646) 786-4442
E-mail: gfinizio@kilpatricktownsend.com
E-mail: dposner@kilpatricktownsend.com

*Counsel to the Official Committee of Unsecured Creditors*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification numbers are (1) YogaWorks, Inc., a Delaware corporation (9105); and (2) Yoga Works, Inc., a California corporation (0457).

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

**ARTICLE I INTRODUCTION**.................................................................................1

**ARTICLE II RULES OF INTERPRETATION**.........................................................1

**ARTICLE III DEFINED TERMS** ...........................................................................2

**ARTICLE IV UNCLASSIFIED CLAIMS** .............................................................10

**ARTICLE V CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS** .................................................................12

**ARTICLE VI MEANS FOR IMPLEMENTATION OF THE PLAN** ......................15

**ARTICLE VII TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ....................................................................19

**ARTICLE VIII PROVISIONS GOVERNING RESOLUTION OF CLAIMS AND DISTRIBUTIONS OF PROPERTY UNDER THE PLAN** .........................19

**ARTICLE IX DISCHARGE; RELEASES, INJUNCTION, AND RELATED PROVISIONS** ...............................................................23

**ARTICLE X CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE** ...............27

**ARTICLE XI RETENTION OF JURISDICTION** ..................................................28

**ARTICLE XII MISCELLANEOUS  PROVISIONS** ...............................................29

LEGAL\50996274\1

## ARTICLE I
## INTRODUCTION

Pursuant to title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., the Debtors and the Creditors' Committee in these Chapter 11 cases hereby propose this plan of liquidation under chapter 11 of the Bankruptcy Code.  The Debtors and the Creditors' Committee are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

The Plan is a liquidating chapter 11 Plan.  The Plan provides for the proceeds from the Debtors' assets already liquidated or to be liquidated over time to be distributed to holders of Allowed Claims in accordance with the terms of the Plan and the priority of claims provisions in the Bankruptcy Code.

The Plan proposes to fairly and efficiently allocate the Debtors' remaining assets in a manner that is supported by the principal constituencies in the Chapter 11 Cases and will allow such cases to be promptly resolved.

**ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTORS ARE ENCOURAGED TO READ THE PLAN IN ITS ENTIRETY, AND TO CONSULT WITH AN ATTORNEY, BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3019, AND IN THE PLAN, THE PLAN PROPONENTS RESERVE THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THE PLAN, OR ANY PART THEREOF, PRIOR TO ITS SUBSTANTIAL CONSUMMATION.**

## ARTICLE II
## RULES OF INTERPRETATION

### 2.1.    Rules of Interpretation

All capitalized terms not defined elsewhere in the Plan shall have the meanings assigned to them in the Defined Terms set forth below.  Any capitalized term used in the Plan that is not defined herein has the meaning ascribed to that term in the Bankruptcy Code and/or Bankruptcy Rules.  For purposes of the Plan, any reference in the Plan to an existing document or exhibit filed or to be filed means that document or exhibit as it may have been or may be amended, supplemented, or otherwise modified.

For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neutral gender shall include the masculine, feminine and the neutral gender; (b) any reference herein to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to

1

Articles hereof or hereto; (e) the words ''herein,'' "hereof" and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings of Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

Captions and headings to articles, sections and exhibits are inserted for convenience of reference only and are not intended to be part of or to affect the interpretation of the Plan. The rules of construction set forth in section 102 of the Bankruptcy Code shall apply.

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

All references herein to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

### 2.2  Exhibits

All exhibits to this Plan will be included with the Plan Supplement, which will be filed in substantially final form with the Bankruptcy Court no later than seven (7) calendar days prior to the Voting Deadline. The Plan Supplement shall be available for inspection (i) at the Office of the Clerk of the Bankruptcy Court, or (ii) at http://www.pacer.gov, or (iii) from the Noticing Agent website at www.bmcgroup.com/yogaworks, or (iv) additionally, interested parties may also obtain a copy of the Plan Supplement (including all exhibits contained therein), once filed, from the Debtors by a written request sent to the following address: Shulman Bastian Friedman & Bui LLP, Attn: Alan Friedman, Attn: Melissa Lowe, 100 Spectrum Center Drive, Suite 600, Irvine, CA 92618, afriedman@shulmanbastian.com, mlowe@shulmanbastian.com.

### 2.3  Controlling Document

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of an inconsistency between the Plan and any document included in the Plan Supplement, the terms of the relevant provision in the Plan shall control (unless stated otherwise in such document or in the Confirmation Order). In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

## ARTICLE III
## DEFINED TERMS

The following capitalized terms used in the Plan shall have following meanings:

1. **Administrative Bar Date**" means the first Business Day that is thirty (30) days after service of the notice of the Effective Date and is the deadline for a holder of an Administrative Claim to file a request with the Bankruptcy Court for payment of such Administrative Expense in the manner indicated in Article 4.02 hereof.

LEGAL\50996274\1

2.      **"Administrative Claims"** means Claims that have been timely filed before the Administrative Bar Date, pursuant to the deadline and procedure set forth herein (except as otherwise provided herein or by a separate order of the Bankruptcy Court), for costs and expenses of administration under Sections 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, without limitation: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries or commissions for services and payments for goods and other services); and (b) all fees and charges assessed against the Estates under 28 U.S.C. §1930; provided, however, that the U.S. Trustee shall not be required to file a request for payment of fees and charges assessed against the Estates under 28 U.S.C. § 1930 before the Administrative Bar Date.  As used herein, the term "Administrative Claims" shall exclude Professional Compensation Claims.

3.      "**Administrative Tax Claims**" means Administrative Claims by a Governmental Unit for taxes under Section 503(b)(1)(B), (C) or (D) (and for interest and/or penalties related to such taxes) for any tax year or period, all or any portion of which occurs or falls within the period from and including the Petition Date through and including the Effective Date.

4.      "**Affiliate**" shall mean "affiliate" as defined in section 101(2) of the Bankruptcy Code.

5.      **"Allowed"** means (a) a Claim that has been scheduled by the Debtors in their Schedules as other than disputed, contingent or unliquidated which has not been superseded by a filed proof of claim and which scheduled Claim has not been amended; (b) a Claim that has been allowed by a Final Order; (c) a Claim that is allowed by the Debtors on or after the Effective Date and, to the extent necessary, approved by the Bankruptcy Court; (d) a Claim that has been timely filed by the Bar Date for which no objection has been filed by the Objection Deadline; or (e) a Claim that is allowed pursuant to the terms of this Plan.  For the avoidance of doubt, any Claim that relates to obligations that were assumed by the Buyer pursuant to the Asset Purchase Agreement shall not be an Allowed Claim for purposes of this Plan.  For the avoidance of doubt and notwithstanding anything to the contrary herein, for purposes of (a), above, Claims that were scheduled by the Debtors in aggregate format, including those Claims designated as "s83" at line 2.58 in the schedules for Yoga Works, Inc. [D.I. 151], shall not be considered Allowed.

6.      "**Assets**" means all tangible and intangible assets of every kind and nature of the Debtors and their Estates within the meaning of section 541 of the Bankruptcy Code.

7.      "**Asset Purchase Agreement**" means that certain Asset Purchase Agreement dated as of December 22, 2020, between Debtors (as sellers) and The YW Company LLC, a California limited liability company (as buyer), and Filed with the Bankruptcy Court [D.I. 240], including all schedules and exhibits thereto.

8.      **"Avoidance Actions"** means any and all avoidance, recovery, subordination, or other claims, actions, or remedies which any of the Debtors, the debtors in possession, the Estates, or other appropriate parties in interest have asserted or may assert under sections 502, 510, 542, 544, 545, or 547 through 553 of the Bankruptcy Code or under similar or related state or federal statutes and common law.

9.      "**Ballot**" means the form approved by the Bankruptcy Court and distributed to each Holder of an Impaired Claim or Interests that are entitled to vote on the Plan by which such parties may indicate acceptance or rejection of the Plan.

10.     **"Balloting Agent"** means BMC Group, Inc., or any successor appointed by the Bankruptcy Court.

11.      **"Bankruptcy Code"** means title 11 of the United States Code, as amended from time to time.

12.      "**Bankruptcy Court**" means The United States Bankruptcy Court for the District of Delaware, having jurisdiction over the Chapter 11 Cases or, if such Court ceases to exercise jurisdiction over the Chapter 11 Cases, such court or adjunct thereof that exercises jurisdiction over such Chapter 11 Case in lieu of the United States Bankruptcy Court for the District of Delaware.

13.      **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure promulgated pursuant to 28 U.S.C. § 2075, as now in effect or hereinafter amended, together with the Local Rules of the Bankruptcy Court.

14.      **"Bar Date"** means, with respect to any particular Claim, the specific date set by the Bankruptcy Court as the last day for Filing proofs of Claim or proofs of Interest against the Debtors in these Chapter 11 Cases for that specific Claim or Equity Interest.

15.      **"Bar Date Order"** means the order or orders of the Bankruptcy Court setting the Bar Date, including the Order Establishing Bar Dates for Filing Claims and Approving Form and Manner of Notice Thereof [D.I. 267].

16.      **"Business Day"** means any day, other than a Saturday, a Sunday or a "legal holiday," as defined in Bankruptcy Rule 9006(a).

17.      "**Buyer**" means affiliates of MEP Capital Management, LLC and affiliates of GoDigital Media Group, LLC, and their assignee, The YW Company, LLC.

18.      **"Cash"** means legal tender of the United States of America and cash equivalents, including, but not limited to, bank deposits, immediately available or cleared checks, drafts, wire transfers and other similar forms of payment.

19.      "**Causes of Action**" means all Claims, actions, causes of action, choses in action, Avoidance Actions, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims and crossclaims of the Debtors, the Debtors-in-Possession and/or the Estates that are or may be pending on the Effective Date or instituted by the Debtors after the Effective Date against any entity, based in law or equity, whether direct, indirect, derivative or otherwise and whether asserted or unasserted as of the Effective Date.  For the avoidance of doubt, Causes of Action also includes: (a) any right of setoff, counterclaim or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims or Equity Interests; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; and (d) any claim or defense including fraud, mistake, duress and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

20.      **"Chapter 11 Cases"** means, (i) YogaWorks Inc., a Delaware corporation, Case No. 20-12599 (KBO) and (ii) Yoga Works, Inc., a California corporation, Case No. 20-12600 (KBO).

21.      **"Claim" or "Claims"** means any claim against the Debtors or any property of the Debtors within the meaning of section 101(5) of the Bankruptcy Code.

22.      "**Claims Agent**" shall mean the claims agent appointed for the Chapter 11 cases,

4

BMC Group, Inc., or any successor appointed by the Bankruptcy Court.

23.     "**Claims Objection Bar Date**" means the bar date for objecting to proofs of claim, which shall be ninety (90) days after the Effective Date; provided, however, that the Debtors, the Liquidating Debtors, and the Plan Administrator, as applicable, may seek by motion additional extensions of this date from the Bankruptcy Court.

24.     "**Class**" means a category of holders of Claims or Equity Interests as set forth in Article V hereof pursuant to Section 1122(a) of the Bankruptcy Code.

25.     "**Confirmation Date**" means the date on which the Confirmation Order is entered by the Bankruptcy Court.

26.     "**Confirmation Hearing**" means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

27.     "**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code, which shall be reasonably acceptable in form and substance to the Debtors, the Creditors' Committee, and GHP.

28.     "**Consummation**" shall mean the occurrence of the Effective Date.

29.     "**Contingent**" shall mean, with reference to a Claim, a Claim that has not accrued or is not otherwise payable and the accrual of which, or the obligation to make payment on which, is dependent upon future vent that may or may not occur.

30.     "**Convenience Class Claim**" means a Claim that would otherwise be a General Unsecured Claim that is (a) in an amount equal to or less than $26,000 or (b) in an amount that has been reduced to $26,000 pursuant to a Convenience Class Election made by the Holder of such Claim.

31.     "**Convenience Class Election**" means an irrevocable election made on the Ballot by the Holder of a Claim that would otherwise be a General Unsecured Claim in an amount greater than $26,000 to reduce such Claim to $26,000.

32.     "**Creditor**" shall have the meaning ascribed to such term in section 101(10) of the Bankruptcy Code.

33.     "**Creditors' Committee**" shall mean the official committee of unsecured creditors for the Chapter 11 Cases appointed by the U.S. Trustee, pursuant to Section 1102 of the Bankruptcy Code, on October 27, 2020 [D.I. 88].

34. "**Customer Obligation Claims**" means any Claim that may be owed by the Debtors to any of their customers in the ordinary course of business arising from or in any way related to refunds.

35.     "**Debtors**" or "**Debtors in Possession**" means, collectively, the above-captioned debtors and debtors in possession specifically identified on the cover page to this Plan.

36.     "**DIP Agreement**" shall mean the Debtor-In-Possession Loan and Security Agreement between the Debtors, on one hand, and Serene Investment Management, LLC and its affiliates including without limitation Yogaworks Investment Fund, LLC.

5

37.    "**DIP Documents**" shall mean the DIP Agreement and all related documents whereby the DIP Lender lent to the Debtors postpetition financing in the principal amount of $3,350,000.

38.    "**DIP Lender**" shall mean Serene Investment Management, LLC and its affiliates including without limitation Yogaworks Investment Fund, LLC.

39.    "**Disallowed**" or "**Disallowed Claim**" shall mean with respect to any Claim, except as otherwise provided herein, a Claim or any portion thereof that (a) has been disallowed by agreement with the creditor, (b) has been disallowed by Final Order, (c) is listed in the Schedules in an unknown amount, as zero, as contingent, disputed, or unliquidated, or is not listed in the Schedules, and as to which no proof of Claim or Administrative Expense has been Filed, or (iv) has been withdrawn by the applicable creditor.

40.    "**Disclosure Statement**" means the Disclosure Statement for the Plan dated as of February 16, 2021, prepared and distributed in accordance with the Bankruptcy Code, Bankruptcy Rules and any other applicable law, and approved by the Bankruptcy Court in the Disclosure Statement Order, as it is amended, supplemented or modified from time to time.

41.    "**Disclosure Statement Order**" means the order approving the Disclosure Statement, which was entered by the Bankruptcy Court on _____, 2021 [D.I. ___].

42.    "**Disputed**" means, with respect to any Claim: (a) listed on the Schedules as unliquidated, disputed or contingent, unless a proof of Claim has been timely filed; (b) as to which the Debtors, Liquidating Debtors, Plan Administrator or the Creditors' Committee has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules; or (c) as otherwise disputed by the Debtors, Liquidating Debtors, Plan Administrator, or the Creditors' Committee in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order.

43.    "**Distribution(s)**" means the transfer of Cash or other property by the Plan Administrator to the Holders of Allowed Claims pursuant to this Plan.

44.    "**Distribution Date**" means the date on which a Distribution is made pursuant to this Plan.

45.    "**Distribution Record Date**" means the Confirmation Date.

46.    "**Distribution Reserve**" has the meaning assigned to it in Article 8.02(e).

47.    "**Document Destruction Notice Parties**" means the direct parties to any of the ongoing and outstanding litigation where the automatic stay was modified pursuant to agreement by the Debtors prior to the Effective Date.

48.    "**Effective Date**" means the date established pursuant to Article X of the Plan.

49.    "**Entity**" has the meaning set forth in Section 101(15) of the Bankruptcy Code.

50.    "**Equity Interest**" means any equity interest in the Debtors that existed immediately prior to the Petition Date, including, without limitation: (a) any common equity interest in the Debtors that existed immediately prior to the Petition Date, including, without limitation, all issued, unissued, authorized or outstanding shares of common stock, together with any warrants, options or legal, contractual or equitable rights to purchase or acquire such interests at any time; (b) any preferred equity interest in the Debtors that existed immediately prior to the Petition Date, including, without limitation, all issued, unissued, authorized or outstanding shares of

6

preferred stock; and, as to any of the foregoing, (c) any warrants, options or legal, contractual or equitable rights to purchase or acquire such interests.

51.     "**Estate**" or "**Estates**" means the estate of each Debtor created on the Petition Date by Section 541 of the Bankruptcy Code.

52.     "**Exculpated Parties**" means, collectively, and in each case in its capacity as such: (a) the present and former officers, directors, managers, and employees of the Debtors who served in such capacities at any point from and after the Petition Date and otherwise qualify as Released Parties, (b) the Debtors' Professionals, (c) the Creditors' Committee's Professionals; and (d) the members of the Creditors' Committee.

53.     "**Executory Contract**" shall mean a contract or lease to which the Debtors are a party that is subject to  assumption or rejection under section 365 of the Bankruptcy Code.  For the avoidance of doubt, obligations with respect to the Debtors' customers shall not be considered Executory Contracts.

54.     "**File" or "Filed**" means, with respect to any pleading, entered on the docket of the Chapter 11 Cases and properly served in accordance with the Bankruptcy Rules.

55.     "**Final Order**" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to appeal, petition for certiorari or move for re-argument or rehearing has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or has otherwise been dismissed with prejudice.

56.     "**Final Decree**" means the order entered pursuant to section 350 of the Bankruptcy Code and Bankruptcy Rule 3022 closing a Chapter 11 Case.

57.     "**General Bar Date Order**" means the Order Establishing Bar Dates for Filing Claims, entered by the Bankruptcy Court on January 11, 2021 [D.I. 267].

58.     "**General Bar Date**" means February 10, 2021 at 5:00 p.m. (Eastern Time), as established in the General Bar Date Order.

59.     "**General Unsecured Claims**" means Claims against the Debtors that are not Secured Claims, Administrative Claims, Priority Tax Claims, Priority Non-Tax Claims, Professional Compensation Claims, Intercompany Claims or Equity Interests.

60.     "**GHP**" means Great Hill Equity Partners V, LP.

61.     "**Governmental Unit**" has the meaning set forth in Section 101(27) of the Bankruptcy Code.

62.     "**Governmental Unit Bar Date**" means April 12, 2021 at 5:00 p.m. (Eastern Time), as established in the General Bar Date Order for each and every Governmental Unit.

63.     "**GUC Cash**" means Cash in the amount of $340,000.00 to be made available to pay the claims of Allowed General Unsecured Claims, except as otherwise provided in the Plan.

64.     "**Holder**" means an Entity holding a Claim or Interest, as applicable.

7

65.    "**Impaired**" means, with respect to a Claim, Equity Interest, or Class of Claims or Equity Interests, "impaired" within the meaning of Sections 1123(a)(4) and 1124 of the Bankruptcy Code.

66.    "**Insider**" shall have the meaning set forth in section 101(31) of the Bankruptcy Code.

67.    "**Intercompany Claim**" means any Claim asserted by one of the Debtors against another Debtor.

68.    "**Intercompany Interest**" means (a) any Equity Interest, including all membership interests, shares or similar securities, whether or not transferable or denominated "stock" and whether issued, unissued, authorized or outstanding; (b) any warrant, option, or contractual right to purchase, sell, subscribe or acquire such Equity Interest at any time and all rights arising with respect thereto; and (c) any similar interest in the Debtors.

69.    "**Liquidating Debtors**" means the Debtors on and after the Effective Date.

70.    "**Non-Released Preference Claims**" means any preference claims available to the Debtors, the Liquidating Debtors, or the Estates under 11 U.S.C. §547 or under similar or related state or federal statutes and common law, other than any such preference claims against GHP or any other Released Parties.

71.    "**Noticing Agent**" means BMC Group, Inc.

72.    "**Petition Date**" means October 14, 2020.

73.    "**Plan**" means this plan of liquidation under chapter 11 of the Bankruptcy Code, either in its present form or as it may be altered, amended, modified or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules or herewith, as the case may be, and the Plan Supplement, which is incorporated herein by reference.

74.    "**Plan Administrator**" means the person to be jointly appointed by the Debtors and the Creditors' Committee to administer the Liquidating Debtors, reconcile Claims, and make all Distributions pursuant to the terms of the Plan.

75.    "**Plan Proponents**" means the Debtors and the Creditors' Committee.

76.    "**Plan Supplement**" means the compilation of documents and forms of documents, schedules and exhibits to the Plan, which shall be reasonably acceptable in form and substance to the Debtors, the Creditors' Committee, and GHP.

77.    "**Priority Non-Tax Claims**" means Claims entitled to priority in payment pursuant to Sections 507(a)(4), 507(a)(5), 507(a)(7) or 507(a)(9) of the Bankruptcy Code.

78.    "**Priority Tax Claims**" means Claims of Governmental Units of the kind specified in Section 507(a)(8) of the Bankruptcy Code.

79.    "**Pro Rata**" means the ratio of the amount of an Allowed Claim in a particular Class to the aggregate amount of all Allowed Claims in such Class.

80.    "**Professional**" means a Person or Entity employed pursuant to a Final Order in accordance with Sections 327, 328, or 1103 of the Bankruptcy Code, and to be compensated for services rendered prior to and including the Effective Date pursuant to Sections 327, 328, 329,

LEGAL\50996274\1

330, or 331 of the Bankruptcy Code.

81.    "**Professional Compensation Claims**" means a Claim of a Professional for professional services rendered or costs incurred on or after the Petition Date through the Effective Date.

82.    "**Professional Claims Bar Date**" means 5:00 p.m. (Prevailing Eastern Time) on the date that is the first Business Day after the date that is thirty (30) days after the Effective Date.

83.    "**Rejection Claim**" shall mean any Claim for amounts due as a result of the rejection by the Debtor of any Executory Contract under section 365 of the Bankruptcy Code.

84.    "**Rejection Damages Bar Date**" shall mean the deadline by which a counterparty to an Executory Contract of the Debtors rejected under this Plan must file a proof of Claim for damages arising from such rejection, and shall be the later of (a) the General Bar Date or the Governmental Bar Date, as applicable, or (b) 5:00 p.m. (prevailing Eastern time) on the date that is thirty-five (35) days following service of any order approving rejection of any executory contract or unexpired lease of the Debtors.

85.    "**Released Parties**" (each one, a "Released Party") means each of the following, solely in its capacities as such: (a) the Debtors and the Estates, (b) the Creditors' Committee and its members, (c) GHP; (d) Great Hill Investors, LLC; (e) all Holders of Claims that vote to accept the Plan; (f) Serene; (g) with respect to the foregoing clauses (a) through (f), each such Entity's current and former Affiliates (including but not limited to YogaWorks Investment Fund, LLC), current and former directors (including, but not limited to, Lance Miller and Peter Elkin), officers (including, but not limited to, Brian Cooper), equity holders, members, managers, partners, general partners, representatives, employees, agents, financial advisors, attorneys, accountants, investment bankers, and other professionals.  Notwithstanding anything to the contrary herein, any Released Party that objects to or otherwise takes steps to interfere with or obstruct confirmation or consummation of the Plan or that encourages, supports, aids, or facilitates any third parties in doing the same, as reasonably determined by the Plan Proponents on or before the Effective Date, shall not be a Released Party.

86.    "**Releasing Parties**" (each one, a "Releasing Party") means each of the following, solely in its capacities as such: (a) the Debtors and the Estates, (b) the Creditors' Committee and its members, (c) GHP; (d) Great Hill Investors, LLC; (e) Serene; (f) with respect to the foregoing clauses (a) through (e), each such Entity's current and former Affiliates (including but not limited to YogaWorks Investment Fund, LLC), current and former directors (including, but not limited to, Lance Miller and Peter Elkin), officers (including, but not limited to, Brian Cooper), equity holders, members, managers, partners, general partners, representatives, employees, agents, financial advisors, attorneys, accountants, investment bankers, and other professionals; (f) all Holders of Claims and Interests who returned a Ballot and checked the opt-in box on the Ballot;  and (g) all Holders of Claims and Interests who were paid in full under the Plan.

87.    "**Retained Assets**" mean (i) all Causes of Action held by the Debtors, the Liquidating Debtors, or the Estates against non-Released Parties; and (ii) the Non-Released Preference Claims. For the avoidance of doubt, all Causes of Action (including, but not limited to, Avoidance Actions) against the Released Parties shall be forever and unconditionally released as set forth herein.

88.    "**Sale**" means the sale of substantially all of the Debtors' operating assets to the Buyer pursuant to the Asset Purchase Agreement and the Sale Order.

89.    "**Sale Closing Date**" means December 30, 2020.

9

90.    "**Sale Order**" means the Order (A) Authorizing Sale of Substantially All of Debtors' Assets Pursuant to Successful Bidder(s)' Asset Purchase Agreement, Free and Clear of Liens, Claims, Encumbrances, and Other Interests; and (B) Approving Assumption and Assignment of Certain Executory Contract and Leases, and entered by the Bankruptcy Court on December 23, 2020 [D.I. 240].

91.    "**Schedules**" means the schedules of assets and liabilities, schedules of executory contracts and statements of financial affairs Filed on November 12, 2020, as may be amended.

92.    "**Secured Claim**" means a Claim that is secured (i) by a lien that is valid, perfected and enforceable under the Bankruptcy Code or applicable non-bankruptcy law or by reason of a Final Order; or (ii) as a result of rights of setoff under Section 553 of the Bankruptcy Code, but in any event only to the extent of the value, determined in accordance with Section 506(a) of the Bankruptcy Code, of the holder's interest in the Estate's interest in such property or to the extent of the amount subject to such setoff, as the case may be.

93.    "**Serene**" means Serene Investment Management, LLC and its affiliates.

94.    "**Tax**" or "**Taxes**" shall mean all income, gross receipts, sales, use, transfer, payroll, employment, franchise, profits, property, excise, or other similar taxes, assessments or charges of any kind whatsoever (whether payable directly or by withholding), together with any interest and any penalties, additions to tax, or additional amounts imposed by any taxing authority of a Governmental Unit with respect thereto.

95.    "**Unimpaired**" means, with respect to a Claim, Equity Interest, or Class of Claims or Equity Interests, not "impaired" within the meaning of Sections 1123(a)(4) and 1124 of the Bankruptcy Code.

96.    "**U.S. Trustee**" means the Office of the United States Trustee for the District of Delaware.

97.    "**U.S. Trustee Fees**" means fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930.

98.    "**Voting Deadline**" shall mean _____, 2021, at 5:00 p.m., (prevailing Eastern time), the date and time by which Ballots to accept or reject the Plan must be received by the Balloting Agent in order to be counted.

## ARTICLE IV
## UNCLASSIFIED CLAIMS

### 4.01    Administrative Claims

(a)    <u>General</u>.  Subject to the bar date provisions set forth in Article 4.02, unless otherwise agreed to by the parties, each holder of an Allowed Administrative Claim shall receive Cash equal to the unpaid portion of such Allowed Administrative Claim within thirty (30) days after the later of (a) the Effective Date, (b) the date such Claim is Allowed, or (c) such other date as is mutually agreed upon by the Debtors and the holder of such Claim.

(b)    <u>Payment of Statutory Fees</u>.  All fees payable pursuant to 28 U.S.C. § 1930 shall be paid in Cash no later than the Effective Date.  U.S. Trustee Fees shall be paid and post-confirmation reports shall be filed as required by 28 U.S.C. § 1930 until the Chapter 11 Cases are

10

closed, converted or dismissed. After confirmation, the Debtors will pay post-confirmation quarterly fees to the U.S. Trustee until a Final Decree is entered or the case is converted or dismissed as provided in 28 U.S.C. § 1930(a)(6).

### 4.02    General Bar Date for Administrative Claims

(a)    Requests for payment of Administrative Claims must be included within an application (setting forth the amount of, and basis for, such Administrative Claims, together with documentary evidence) and Filed and served on respective counsel for the Debtors and the Creditors' Committee, no later than the Administrative Claim Bar Date or by such earlier deadline governing a particular Administrative Claim contained in an order of the Bankruptcy Court entered before the Effective Date. The Debtors will serve all holders of Claims or Equity Interests with a notice of the Administrative Claim Bar Date upon the Effective Date of the Plan. Holders of Administrative Claims that are required to File a request for payment of such Claims and that do not File such requests by the applicable bar date shall be forever barred from asserting such Claims against the Debtors or any of their property, absent order of the Bankruptcy Court to the contrary.

### 4.03.    Professional Compensation Claims

(a)    All Professionals requesting compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code for services rendered before the Effective Date (excluding, without limitation, any compensation or commission requested by any Professional or any other entity for making a substantial contribution in the Chapter 11 Cases, which requests must be filed by the Administrative Claims Bar Date) shall File and serve on counsel for the Debtors, counsel for the Creditors' Committee, and the U.S. Trustee an application for final allowance of compensation and reimbursement of expenses no later than thirty (30) days after the Effective Date.  Objections to applications of Professionals for compensation or reimbursement of expenses must be filed and served on the Debtors, the Creditors' Committee, the U.S. Trustee, and the Professionals to whose application the objections are addressed no later than twenty-one (21) days after the date the application is filed, or the Bankruptcy Court may enter an order authorizing the fees without a hearing.

(b)    Subject in all respects to the occurrence of the Effective Date, the following Professionals have agreed to cap their respective Professional Compensation Claims from the Petition Date through and including January 14, 2021 as follows: (i) Shulman Bastian Friedman & Bui LLP, general counsel to the Debtors, the sum of $235,839.22; (ii) Cozen O'Connor, Delaware counsel to the Debtors, the sum of $89,666.48; (iii) Force 10 Partners, LLC, financial advisors to the Debtors, the sum of $352,663.20; (iv) Kilpatrick Townsend & Stockton LLP, counsel to the Creditors' Committee, the sum of $221,755,21; (v) Morris James LLP, Delaware counsel to the Creditors' Committee, the sum of $82,516.10; and (vi) Dundon Advisers, LLC, financial advisors to the Creditors' Committee, the sum of $128,940.00.  Further, and subject in all respects to the occurrence of the Effective Date, in no event shall the aggregate Professional Compensation Claims from January 15, 2021 through and including closure of the Chapter 11 Cases by the Final Decree exceed $133,300.00 (the "Future Fee Cap").  From the Future Fee Cap, the sum of $118,300.00 shall be allocated to the Debtors' Professionals (Shulman Bastian Friedman & Bui LLP, Cozen O'Connor and Force 10 Partners) and $15,000.00 of which shall be

11

allocated to the Creditors' Committee's Professionals (Kilpatrick Townsend & Stockton LLP, Morris James LLP and Dundon Advisers, LLC).

(c)     Subject in all respects to the occurrence of the Effective Date, the fee allocations set forth in 4.03(b) shall be the sole and exclusive compensation for Professionals for the period from January 15, 2021 through and including closure of the Chapter 11 Cases by the Final Decree. Each allocation shall be considered segregated for each set of Professionals (i.e., the Debtors' Professionals allocation shall be solely and exclusively for the Debtors' Professionals and the Creditors' Committee's Professionals allocation shall be solely and exclusively for the Creditors' Committee's Professionals). To the extent there are any savings in either allocation after full and final payment of the allocated Professionals' fees and expenses, the remainder will be applied as follows: (i) first, to any overage owed to the other Professionals; (ii) second, to any outstanding Allowed Priority Claims or Allowed Administrative Claims; and (iii) third, to the GUC Cash. To the extent there are any shortfalls in either allocation for the allocated Professionals, the affected Professionals agree to complete the work contemplated in the Plan without the payment of any additional compensation.

### 4.04.   Priority Tax Claims

(a)     Pursuant to section 1129(a)(9)(C) of the Bankruptcy Code, unless otherwise agreed by the holder of a Priority Tax Claim and the Debtors, each holder of an Allowed Priority Tax Claim shall receive, in full satisfaction of its Allowed Priority Tax Claim that is due and payable on or before the Effective Date, on account of and in full and complete settlement and release of such Claim, Cash in an amount equal to the amount of such Allowed Priority Tax Claim; provided, however, that, in the event an Allowed Priority Tax Claim is also a Secured Claim, such Claim shall, to the extent it is Allowed, be treated as an Other Secured Claim if such Claim is not otherwise paid in full.

(b)     Notwithstanding anything herein to the contrary, any Claim on account of any penalty arising with respect to or in connection with an Allowed Priority Tax Claim that does not compensate the Holder for actual pecuniary loss shall be treated as a General Unsecured Claim, and the Holder (other than as the Holder of a General Unsecured Claim) may not assess or attempt to collect such penalty from the Debtors or their respective property..

### ARTICLE V
### CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

### 5.01   Summary

(a)     In accordance with Section 1123(a)(1) of the Bankruptcy Code, the Debtors have not classified Administrative Claims and Priority Tax Claims, as described in Article IV. Accordingly, except for Administrative Claims and Priority Tax Claims, all Claims against and Equity Interests in the Debtors are placed in Classes as set forth below.

(b)     The following table classifies Claims against and Equity Interests in the Debtors for all purposes, including voting, confirmation and Distribution pursuant hereto and pursuant to Sections 1122 and 1123(a)(1) of the Bankruptcy Code. The Plan deems a Claim or Equity

Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class. A Claim or Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.  The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including voting, confirmation and distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

### 5.02    Identification of Classes

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| Class 1: General Unsecured Claims | Allowed General Unsecured Claims against the Debtors that are not otherwise part of Class 2. | Yes | Yes |
| Class 2: Convenience Class Claims | Allowed General Unsecured Claims against the Debtors that are (i) in an amount equal to or less than $26,000; or (ii) in an amount that has been reduced to $26,000 pursuant to a Convenience Class Election made by the Holder of such Claim. | Yes | Yes |
| Class 3: Equity Interests | All Equity Interests in the Debtors. | Yes | No (deemed to reject) |

### 5.03    Elimination of Classes for Voting Purposes

Any Class of Claims or Equity Interests that is not occupied as of the date of the Confirmation Hearing shall be deemed deleted from the Plan for purposes of voting on acceptance or rejection of the Plan by such Class under section 1129(a)(8) of the Bankruptcy Code.

### 5.04    Controversy Concerning Classification, Impairment or Voting Rights

In the event a controversy or dispute should arise involving issues related to the classification, impairment or voting rights of any Creditor or Interest Holder under the Plan, whether before or after the Confirmation Date, the Bankruptcy Court may, after notice and a hearing, determine such controversy.  Without limiting the foregoing, the Bankruptcy Court may estimate for voting purposes (i) the amount of any contingent or unliquidated Claim the fixing or

liquidation of, as the case may be, would unduly delay the administration of the Chapter 11 Cases and (ii) any right to payment arising from an equitable remedy for breach of performance.

**5.05    Insurance**

Notwithstanding anything to the contrary herein, unless elected otherwise by the Debtors, in consultation with the Creditors' Committee and the Plan Administrator, as applicable, if any Allowed Claim is covered by an Insurance Policy, such Claim shall first be paid from proceeds of such Insurance Policy to the extent such proceeds are available, with the balance, if any, treated in accordance with the provisions of the Plan governing the Class applicable to such Claim.

**5.06    Treatment of Claims and Equity Interests**

(a)      **General Unsecured Claims (Class 1)**

(i)      *Classification*: Class 1 consists of Allowed General Unsecured Claims that are not part of Class 2.

(ii)      *Treatment*: In full and final satisfaction, settlement, release, and discharge of and in exchange for each such Allowed General Unsecured Claim, each such Holder shall:

1)  receive its Pro Rata share of the GUC Cash;

2)  receive its Pro Rata share of the proceeds or property derived from the Retained Assets; and

3)  if such Holder submits a Ballot and checks the opt-in box, such Holder shall be deemed a Released Party for all purposes hereunder.

(iii)      *Voting*: Class 1 is Impaired. Holders of Allowed Class 1 Claims are entitled to vote to accept or reject the Plan.

(b)      **Convenience Class Claims (Class 2)**

(i)      *Classification*: Class 2 consists of Allowed General Unsecured Claims against the Debtors that are (i) in an amount equal to or less than $26,000; or (ii) in an amount that has been reduced to $26,000 pursuant to a Convenience Class Election made by the Holder of such Claim.

(ii)      *Treatment*: In full and final satisfaction, settlement, release, and discharge of and in exchange for each such Allowed General Unsecured Claim, each such Holder shall:

1)  receive the sum of 3% of its Allowed General Unsecured Claim no later than forty-five (45) days after the Effective Date; and

14

>   2)   if such Holder submits a Ballot and checks the opt-in box, such
>       Holder shall be deemed a Released Party for all purposes hereunder.

(iii)    *Voting*:  Class 2 is Impaired.  Holders of Allowed Class 2 Claims are entitled to vote to accept or reject the Plan.

**(c)    Equity Interests (Class 3)**

(i)    *Classification*:  Class 3 consists of the shareholders and all holders of equity in the Debtors.

(ii)    *Treatment*:  In full and final satisfaction of each Allowed Equity Interest in the Debtors, each Allowed Equity Interest shall be canceled, released, and extinguished, and will be of no further force or effect and no Holder of Allowed Equity Interests shall be entitled to any recovery or distribution under the Plan on account of such Equity Interests.

(iii)    *Voting*:  Class 3 is Impaired.  Holders of Class 3 Claims are not entitled to vote and are deemed to reject the Plan.

## ARTICLE VI
## MEANS FOR IMPLEMENTATION OF THE PLAN

### 6.01    Implementation of the Plan

The Plan will be implemented by the Liquidating Debtors and the Plan Administrator in a manner consistent with the terms and conditions set forth in the Plan and the Confirmation Order.

### 6.02    Funding of the Plan

The Plan will be funded by the Cash and Cash equivalents held by the Debtors generated from the Sale, plus the Plan Funding Advance from GHP of $1,150,000.00 to be released to the Debtors within three (3) business days prior to the Effective Date, plus payment of the sum of $100,000.00 to be paid by Serene to the Debtors within three (3) business days prior to the Effective Date, plus an additional sum of $465,000.00 to be paid by GHP to the Debtors within three (3) business days prior to the Effective Date.

In the event there are insufficient funds to pay or otherwise satisfy Allowed Secured Claims, Allowed Priority Claims and Allowed Administrative Claims, such shortfall, if any, shall be funded (i) first, by available Cash other than the GUC Cash after payment of all Claims senior in priority including, but not limited to, Allowed Professional Compensation Claims (subject in all respects to Article 4.3 of this Plan); (ii) second, by GHP, in an amount not to exceed $50,000.00 (the "GHP Backstop"); and (iii) third, from the GUC Cash.

In the event that (i) GHP is not required to fund any portion of the GHP Backstop; and (ii) the Debtors' Cash on hand exceeds the GUC Cash following payment or satisfaction of all

15

Allowed Secured Claims, Allowed Administrative Claims, Allowed Priority Claims, and Allowed Professional Compensation Claims, such excess Cash, if any, shall added to the GUC Cash.

**6.03    Vesting of Assets in the Liquidating Debtors**

Except as expressly provided in the Plan or the Plan Supplement, on the Effective Date, all Retained Assets shall vest in the Liquidating Debtors free and clear of all Claims, liens, encumbrances, charges, and other rights of Creditors or Equity Interests holders arising on or before the Effective Date, but subject to the terms and conditions of the Plan and the Confirmation Order.

**6.04    Continuing Existence**

From and after the Effective Date, the Liquidating Debtors, in conjunction with the Plan Administrator, shall continue in existence for the purposes of (i) winding up their affairs as expeditiously as reasonably possible, (ii) liquidating, by conversion to Cash, or other methods, the Retained Assets, as expeditiously as reasonably possible, (iii) administering, reviewing, resolving and paying priority Claims and Administrative Claims, (iv) resolving Disputed Claims, (v) administering the Plan, (vi) filing appropriate tax returns; (vii) seeking and obtaining entry of a Final Decree, whether by motion or by certification of counsel, (viii) dissolving the Debtors' corporate entities, and (ix) performing all such other acts and conditions required by and consistent with consummation of the terms of the Plan and the Confirmation Order.  Further, the Liquidating Debtors or any Entity or person jointly selected by the Plan Proponents, shall have the exclusive right to pursue, prosecute, settle, compromise, or abandon the Non-Released Preference Claims, the net proceeds of which shall be distributed to Holders of Allowed General Unsecured Claims.

**6.05    Management of Debtors**

On the Effective Date, the current members of the Debtors' boards of directors and/or managers shall be relieved of all further responsibilities, and shall be deemed to have resigned their positions with the Debtors.  From and after the Effective Date, the Plan Administrator shall administer the affairs of the Liquidating Debtors as set forth in this Plan and the Conformation Order.

**6.06    Appointment of the Plan Administrator**

On or prior to the Confirmation Date, the Debtors and the Creditors' Committee shall jointly appoint the Plan Administrator.  The identity of the Plan Administrator shall be disclosed in the Plan Supplement.

Upon the Effective Date, the Plan Administrator shall be appointed to reconcile General Unsecured Claims, effectuate distributions on account thereof from the GUC Cash, and generally administer the post-Effective Date affairs of the Liquidating Debtors.  The Plan Administrator shall have all the rights and powers to implement the provisions of the Plan pertaining to the Plan Administrator, including the right to (a) make distributions from the GUC

16

Cash as contemplated in the Plan, (b) establish and administer any necessary reserves from the GUC Cash for Disputed Claims that may be required; and (c) object to Disputed Claims and prosecute, settle, compromise, withdraw or resolve in any manner approved by the Bankruptcy Court such Disputed Claims. The Plan Administrator shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Court. The Liquidating Debtors shall provide the Plan Administrator with reasonable access to all relevant books and records so as to enable the Plan Administrator to carry out its duties.

### 6.07    Funding of the Plan Administrator

The Confirmation Order shall authorize the appointment and compensation of the Plan Administrator. The Plan Administrator shall be entitled to compensation equal to no more than $20,000 per month without the need for further Court authorization. The Plan Administrator shall be deemed the Estates' representative in accordance with section 1123 of the Bankruptcy Code and shall have all powers, authority and responsibilities specified under sections 704 and 1106 of the Bankruptcy Code. For the avoidance of doubt, in no event shall (i) the GUC Cash be utilized to pay for the fees and expenses of the Plan Administrator; OR (ii) GHP be required to pay the fees and expenses of the Plan Administrator.

### 6.08    Rights and Powers of the Plan Administrator

On the Effective Date, the Plan Administrator shall also have all authority to make all distributions pursuant to the terms of the Plan. Subject to Article 8 herein, all distributions made to Holders of Allowed Claims are intended to be and shall be final and indefeasible.

### 6.09    Dissolution of Creditors' Committee

On the Effective Date, any statutory committee appointed in the Chapter 11 Cases, including, without limitation, the Creditors' Committee, shall automatically dissolve, and its Professionals and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases, except with respect to (i) any applications for Professional Compensation Claims, including preparing same, objecting to same, defending same and attending any hearing with respect to same; and (ii) any motions or other actions seeking enforcement or implementation of the provisions of this Plan, or the Confirmation Order. Notwithstanding anything to the contrary herein, the compensation for services rendered in connection with the matters in clauses (i) and (ii) shall be subject to the Creditors' Committee allocable portion of the Future Fee Cap ($15,000).

### 6.10    Cancellation of Equity Interests

On the Effective Date, all outstanding prepetition Claims against and Equity Interests in the Debtors shall be deemed cancelled without further act or action under any applicable agreement, law, regulation, order or rule and the obligations of the Debtors relating to, arising under, in respect of, or in connection with such securities, instruments, or agreements shall be deemed discharged, released and/or satisfied as to the Debtors. As of the Effective Date, the Liquidating Debtors will be authorized to execute and file on behalf of creditors Form UCC-3

termination statements, mortgage releases or such other forms as may be necessary or appropriate to implement the provisions of Article VI of the Plan.

### 6.11    Substantive Consolidation of the Debtors for Purposes of the Plan

On the Effective Date:  (a) all Assets (and all proceeds thereof) and liabilities of each Debtor shall be deemed merged or treated as though they were merged into and with the assets and liabilities of the other Debtor, (b) no distributions shall be made under the Plan on account of Intercompany Claims among the Debtors and all such Claims shall be eliminated, (c) all guarantees of the Debtors of the obligations of any other Debtor shall be deemed eliminated and extinguished so that any Claim against any Debtor and any guarantee thereof executed by any other Debtor and any joint and several liability of any of the Debtors shall be deemed to be one obligation of the consolidated Debtors, (d) each and every Claim filed or to be filed in any of the Cases shall be deemed filed against the consolidated Debtors, and shall be deemed one Claim against and obligation of the consolidated Debtors, and (e) for purposes of determining the availability of the right of set-off under Section 553 of the Bankruptcy Code, the Debtors shall be treated as one entity so that, subject to the other provisions of Section 553 of the Bankruptcy Code, debts due to any of the Debtors may be set-off against the debts of the other Debtors. Such substantive consolidation shall not (other than for purposes related to the Plan) affect the legal and corporate structures of the Debtors.

### 6.12    Final Decree

At any time following the Effective Date, the Liquidating Debtors shall be authorized to file a motion for the entry of a final decree closing the Chapter 11 Cases pursuant to section 350 of the Bankruptcy Code.  The Liquidating Debtors are further authorized, but not required, to close one of the Chapter 11 Cases by obtaining a Final Decree by filing a certification of counsel immediately following the Effective Date.

### 6.13    Retention of Records

For the period that is the later of (i) six (6) months following the Effective Date; and (ii) the date final distributions to Holders of Allowed Claims are made pursuant to the terms of this Plan (such period, the "Retention Period"), the Liquidating Debtors shall preserve and maintain its documents and records in the ordinary course of business and according to practices and terms that it deems reasonable and appropriate.  Following the Retention Period, the Liquidating Debtors may, from time to time upon ten (10) days' written notice to the Document Destruction Notice Parties, and without approval of the Bankruptcy Court, destroy any documents and records of the Debtors.  The notice shall provide a reasonable description of the documents and records proposed to be destroyed.  In the event a Document Destruction Notice Party objects to the destruction, it shall provide the Liquidating Debtors with a written agreement and assurance, each of which is reasonably acceptable to the Liquidating Debtors, providing for the reimbursement and payment of all costs and expenses associated with the continued maintenance of such documents and records by the Liquidating Debtors.  Such costs and expenses shall include, but not be limited to, payroll related expenses, third party fees and expenses, storage device costs, copying fees, the fees and expenses of counsel to address any subpoenas or document production demands, and, if such

18

extended maintenance precludes entry of the Final Decree, any fees (including U.S. Trustee Fees) associated with such delay.

## ARTICLE VII
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 7.01    Executory Contracts and Unexpired Leases Deemed Rejected

On the Effective Date, all of the Debtors' Executory Contracts will be deemed rejected as of the Effective Date in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, except with respect to any Executory Contract that: (a) the Debtors previously assumed, assumed and assigned or rejected, or (b) for which, prior to the Effective Date, the Debtors have Filed a motion to assume, assume and assign, or reject on which the Bankruptcy Court has not ruled.  Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of all rejections of Executory Contracts and unexpired leases pursuant to this Article and sections 365(a) and 1123 of the Bankruptcy Code. Nothing herein is intended to affect the validity of contracts and leases entered into by the Debtors on or after the Petition Date, or the rights of the Debtors thereunder, which shall remain in full force and effect after the Effective Date in accordance with their terms.

### 7.02    Bar Date For Rejection Damages

If the rejection by the Debtors of an Executory Contract or an unexpired lease pursuant to Article 7.01 of this Plan results in damages to the other party or parties to such Executory Contract or unexpired lease, a Claim for such damages arising from such rejection shall not be enforceable against the Debtors or their properties or agents, successors, or assigns, unless a Proof of Claim is filed with the Claims Agent so as to actually be received on or before the date that is thirty (30) days after the Effective Date.  For the avoidance of doubt, this Plan shall not serve to extend the deadline to submit any Rejection Claim to the extent that the party asserting such Rejection Claim was subject to an earlier Rejection Damages Bar Date.

## ARTICLE VIII
## PROVISIONS GOVERNING RESOLUTION OF CLAIMS AND DISTRIBUTIONS OF PROPERTY UNDER THE PLAN

### 8.01    Claim Objections

(a)    <u>Right to Object to Claims</u>. Notwithstanding anything to the contrary herein, except insofar as a Claim is Allowed under the Plan on and after the Effective Date, the Plan Administrator and the Liquidating Debtors will have the authority to do any of the following with respect to any Claims or Equity Interests: (1) file, withdraw or litigate to judgment objections to Claims including, without limitation, any Customer Obligation  Claims; (2) settle or compromise any Disputed Claim without any further notice to or action, order or approval by the Bankruptcy Court; and (3) administer and adjust the Claims register to reflect any such settlements or compromises without any further notice to or action, order or approval by the Bankruptcy Court.  The Liquidating Debtors shall succeed to any pending objections to Claims filed by the Debtors prior to the Effective Date, and shall have and retain any and all rights and

19

defenses the Debtors had immediately prior to the Effective Date with respect to any Disputed Claim.  For the avoidance of doubt, the Plan Administrator shall have no obligation to object to or dispute (or expend funds to object to or dispute) any Claim where, in the Plan Administrator's sole judgment, the cost of such objection or dispute is not warranted in light of the potential incremental benefit to the remaining holders of Allowed General Unsecured Claims.

(b)    Claim Objection Deadline.  Objections to Claims must be filed with the Bankruptcy Court, and a copy of the objection must be served on the subject Creditor before the expiration of the Claim Objection Deadline; otherwise such Claims shall be deemed Allowed in accordance with section 502 of the Bankruptcy Code.  The objection shall notify the Creditor of the deadline for responding to such objection.

(c)    Claim Estimation.  Pursuant to section 502(c) of the Bankruptcy Code, the Debtors or the Liquidating Debtors, as applicable, may request estimation or liquidation of any Disputed Claim that is contingent or unliquidated or any Disputed Claim arising from a right to an equitable remedy or breach of performance.

**8.02    Distribution Provisions**

(a)    Generally.  The Plan Administrator shall be responsible for making Distributions under the Plan.

(b)    No Liability.  The Plan Administrator shall only be required to act and make distributions in accordance with the terms of the Plan.  Except on account of gross negligence, fraud, illegality or willful misconduct, the Plan Administrator shall have no (i) liability to any party for actions taken in accordance with the Plan or in reasonable reliance upon information provided to it in accordance with the Plan, or (ii) obligation or liability for distributions under the Plan to any party who does not hold a Claim against the Debtors as of the Distribution Record Date or any other date on which a distribution is made or who does not otherwise comply with the terms of the Plan.

(c)    Distributions on Account of Disputed Claims.  Except as otherwise provided in a Final Order or as agreed by the relevant parties, distributions on account of Disputed Claims, if any, that become Allowed, shall be made by the Plan Administrator at such periodic intervals as the Plan Administrator determines to be reasonably prudent.

(d)    No Distributions Pending Allowance.  Notwithstanding anything herein to the contrary: (a) no distribution shall be made with respect to any Disputed Claim until such Claim becomes an Allowed Claim (as applicable), and (b) unless agreed otherwise by the Plan Administrator no distribution shall be made to any Person that holds both an Allowed Claim and a Disputed Claim until such Person's Disputed Claims have been resolved by settlement or Final Order.

(e)    Distribution Reserve.  On and after the Effective Date, the Plan Administrator, as applicable, shall maintain in reserve such Cash from the applicable distributable assets as the Plan Administrator deems reasonably necessary to satisfy Disputed Claims.

(f)     Distributions in Cash.  Any required Cash payments to the Holders of Allowed Claims shall be made by the Plan Administrator: (a) in U.S. dollars by check, draft or warrant, drawn on a domestic bank, or by wire transfer from a domestic bank, and (b) by first-class mail (or by other equivalent or superior means as determined by the Plan Administrator).

(g)     Timing of Distributions.  Except as specifically set forth in the Plan, the Plan Administrator may determine, in its discretion, the appropriate timing, amount, and cadence for distributions.

(h)     Unclaimed Distributions.  Any entity which fails to claim any Cash within ninety (90) days from the date upon which a distribution is first made to such entity shall forfeit all rights to any distribution under the Plan, and the Plan Administrator shall be authorized to cancel any distribution that is not timely claimed.  Pursuant to section 347(b) of the Bankruptcy Code, upon forfeiture, such Cash (including interest thereon, if any) shall revert to the source of such distribution (i.e., the Distribution Reserve) free of any restrictions under the Plan, the Bankruptcy Code or the Bankruptcy Rules.  Upon forfeiture, (i) the claim of any Creditor or Equity Interest Holder with respect to such funds shall be irrevocably waived and forever barred against the Debtors and the Estates, notwithstanding any federal or state escheat laws to the contrary; and (ii) such distribution shall revert to the source of such distribution (i.e., the Distribution Reserve) for distribution on account of other Allowed Claims.

(i)     Delivery of Distributions and Undeliverable Distributions to Holders of Claims.

(i)     Address for Delivery of Distributions.  Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be made to Holders of record as of the Distribution Record Date by the Plan Administrator, as set forth on the latest date of the following documents: (a) to the address of payment set forth on any of the Proofs of Claim Filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no Proof of Claim is Filed; (b) at the addresses set forth in any written notices of address changes delivered to the Debtors after the date of any related Proof of Claim and prior to the Effective Date; and (c) at the addresses reflected in the Schedules if no Proof of Claim has been Filed and the Debtors have not received a written notice of a change of address prior to the Effective Date.

(ii)     Undeliverable Distributions.  The Plan Administrator shall make one attempt to make the distributions contemplated hereunder in accordance with the procedures set forth herein.  The Plan Administrator, in its sole discretion may, but shall have no obligation to, attempt to locate Holders of undeliverable or unclaimed distributions.  Any distributions returned to the Plan Administrator as undeliverable or are otherwise unclaimed shall remain in the possession of the Plan Administrator until such time as a distribution becomes deliverable or claimed, and no further distributions shall be made to such Holder unless such Holder notifies the Plan Administrator of its then current address.  Any Holder of an Allowed Claim or Equity Interest entitled to a distribution of property under this Plan that does not assert a claim pursuant to the Plan for an undeliverable distribution, or notify the Plan Administrator of such Holder's then current

21

address, within ninety (90) days of such distribution shall have its claim for such undeliverable distribution irrevocably waived and shall be forever barred from asserting any such claim against the Debtors or their respective property, and such distribution shall be deemed unclaimed property under Article 8.02(h) above.

(iii)    After final Distributions have been made in accordance with the terms of the Plan, if the aggregate amount of Unclaimed Distributions and Undeliverable Distributions is less than $26,000, the Plan Administrator may donate such amount to Delaware Consumer Bankruptcy Pro Se Foundation.

(j)    Distribution Record Date. As of 5:00 p.m. (prevailing Eastern time) on the Distribution Record Date, the transfer registers for Claims shall be closed. The Plan Administrator shall have no obligation to recognize the transfer or sale of any Claim that occurs after such time on the Distribution Record Date and shall be entitled for all purposes herein to recognize and make distributions only to those Holders who are Holders of Claims as of 5:00 p.m. (prevailing Eastern time) on the Distribution Record Date. Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to 5:00 p.m. (prevailing Eastern time) on the Distribution Record Date shall be treated as the Holders of such Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to such transfer has not expired by the Distribution Record Date.

(k)    Defenses and Setoff. Nothing contained in this Plan shall constitute a waiver or release by the Debtors, the Liquidating Debtors, or the Plan Administrator of any rights in respect of legal and equitable objections, defenses, setoffs, or recoupment. To the extent permitted by applicable law, the Debtors, the Liquidating Debtors, or the Plan Administrator may, but shall not be required to, set off or recoup against any Claim and the payments or other Distributions to be made under the Plan in respect of such Claim, claims of any nature whatsoever that arose before the Petition Date that the Estates, the Debtors, or the Liquidating Debtors may have against the Holder of such Claim.

(l)    Compliance with Tax Requirements. Notwithstanding anything to the contrary in this Plan, the Debtors, the Liquidating Debtors, and the Plan Administrator, as applicable, shall be entitled to deduct any federal, state or local withholding taxes from any distributions made with respect to Allowed Claims, as appropriate. The Debtors and the Liquidating Debtors shall be authorized to take all actions necessary to comply with applicable withholding and reporting requirements, including, without limitation, applying a portion of any distribution of Cash to be made under the Plan to pay applicable withholding Taxes. Any amounts withheld pursuant to the immediately preceding sentence will be deemed to have been distributed and received by the applicable recipient for all purposes of the Plan. Notwithstanding any other provision of the Plan, each Holder of an Allowed Claim that has received a distribution under the Plan shall have sole and exclusive responsibility for the satisfaction or payment of any tax obligation imposed by any Governmental Unit, including income, withholding and other tax obligation, on account of such distribution. For tax purposes, distributions received in respect of Allowed Claims will be allocated first to the principal amount of such Claims until such principal amount is paid in full and then to any interest accrued on such Claim prior to the Petition Date, and the remaining portion of such distributions, if any, will apply to any interest on such Claim after the Petition

Date.  The Plan Administrator shall be authorized to require each Holder of a Claim to provide it with an executed Form W-9, Form W-8, or any other tax form, documentation or certification as may be requested by the Plan Administrator as a condition precedent to being sent a distribution.  If a Holder of an Allowed Claim does not provide the Plan Administrator with an executed Form W-9, Form W-8 or other requested tax form within ninety (90) days after the date of the initial request, the Plan Administrator may, in its sole discretion (a) make such distribution net of applicable withholding or (b) reserve such distribution, in which case (i) such Holder shall be deemed to have forfeited the right to receive any distribution under the Plan, (ii) any such distribution shall revert to the source of such distribution (i.e., the Distribution Reserve), for distribution on account of other Allowed Claims and (iii) the Claim of the Holder originally entitled to such distribution shall be irrevocably waived and forever barred without further order of the Bankruptcy Court.  The Plan Administrator reserves the right to allocate and distribute all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, Liens and similar encumbrances.

(m)    De Minimis Distributions.  If any Distribution under the Plan to the Holder of an Allowed Claim would be less than $50.00, the Plan Administrator may hold such distribution until the time of a subsequent or final distribution.  If the final distribution under the Plan to the Holder of an Allowed Claim would be less than $50.00, the Plan Administrator may cancel such distribution.  Any cancelled distributions pursuant to this Section shall be treated as unclaimed property under Article 8.02(h) of the Plan.

## ARTICLE IX
## DISCHARGE; RELEASES, INJUNCTION, AND RELATED PROVISIONS

### 9.01    Releases by Debtors

**As of the Effective Date, for good and valuable consideration, including the contributions of the Released Parties in facilitating the administration of the Chapter 11 Cases and other actions contemplated by the Plan and the other contracts, instruments, releases, agreements or documents executed and delivered in connection with the Plan, and except as otherwise provided in this Plan or the Confirmation Order, the Released Parties are deemed forever released and discharged by the Debtors and Estates from any and all Claims, obligations, rights, suits, damages, Causes of Action, Avoidance Actions, remedies and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors or the Estates, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, existing or hereinafter arising, in law, equity or otherwise, that the Debtors or the Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Equity Interest or other entity, based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Chapter 11 Cases, the Plan, the Disclosure Statement, or related agreements, instruments or other documents, including any rights or remedies under section 506 of the Bankruptcy Code, other than Claims or liabilities to the extent arising out of or relating to any act or omission of a Released Party that constitutes gross negligence, actual fraud or willful misconduct, as determined by a Final Order.**

23

### 9.02    Releases by Third Parties

To the extent allowed by applicable law, on, and as of, the Effective Date and for good and valuable consideration, the receipt and sufficiency of which are acknowledged, and except as otherwise provided in this Plan or the Confirmation Order, each Releasing Party is deemed to have forever released, waived, and discharged each of the Debtors, Liquidating Debtors, and each other Released Party, from any and all claims, obligations, actions, suits, rights, debts, accounts, Causes of Action, Avoidance Actions, remedies, agreements, promises, damages, judgments, demands, defenses, and liabilities (other than their respective rights to enforce this Plan and the contracts, instruments, releases, indentures and other agreements or documents executed and/or delivered in connection therewith) arising from or relating to the Released Parties' interaction with, work for, service to, or association with the Debtors (whether prior to or after the Petition Date), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, provided, however, that the release provided in this Section shall not extend to any claims by any Governmental Unit with respect to criminal liability under applicable law, willful misconduct or bad faith under applicable law, or ultra vires acts under applicable law.  For the avoidance of doubt, notwithstanding anything to the contrary contained in this Article 9.02, no holder of a Claim, whether such claim is allowed either prior to or after the Effective Date, shall be deemed to release its rights under Article 5.06 of the Plan, including any rights to receive Plan Distributions, rights or other treatment on account of such Allowed Claim. For avoidance of doubt, notwithstanding anything to the contrary contained in this Section 9.02, no holder of a Professional Compensation Claim, whether such claim is allowed either prior to or after the Effective Date of the Plan, shall be deemed to release its Professional Compensation Claim under this Section 9.02 of the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the third-party release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the third-party release is: (1) consensual; (2) essential to the confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to implementing the Plan; (4) good faith settlement and compromise of the claims released by the third-party release; (5) in the best interests of the Debtors and their respective Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim, obligations, rights, suits, damages, remedies, Cause of Action, or liabilities whatsoever released pursuant to the third-party release.

### 9.03    Exculpation and Limitation of Liability

(a)    The Exculpated Parties will neither have nor incur any liability to any entity for any claims or causes of action arising immediately prior to, on or after the Petition Date and prior to or on the Effective Date for any act taken or omitted to be taken in connection with, or related to (i) preparation for the filing of the Chapter 11 Cases; (ii) the Chapter 11 Cases or in

connection with the administration of the Chapter 11 Cases, (iii) the negotiation or approval of any agreements or pleadings that were either filed with the Bankruptcy Court or incident to the Chapter 11 Cases (including but not limited to approval of the Sale and/or the DIP Credit Agreement), (iv) formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the consummation of the Plan, the Disclosure Statement, or any other contract, instrument, release or other agreement or document created or entered into in connection with the Plan, (v) any other postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, or (vi) the approval of the Disclosure Statement or confirmation or consummation of the Plan; provided, however, that the foregoing provisions will have no effect on the liability of any entity that results from any such act or omission that is determined in a Final Order of the Bankruptcy Court or other court of competent jurisdiction to have constituted gross negligence or willful misconduct; provided, further, that the Exculpated Parties will each be entitled to rely upon the advice of counsel concerning their duties pursuant to, or in connection with, the above referenced documents, actions or inactions.

(b)     The Exculpated Parties have, and upon Confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distributions pursuant to the Plan, and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

## 9.04    Injunction

(a)     FROM AND AFTER THE EFFECTIVE DATE, ALL ENTITIES ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY CAUSE OF ACTION RELEASED OR TO BE RELEASED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER.

(b)     FROM AND AFTER THE EFFECTIVE DATE, TO THE EXTENT OF THE RELEASES AND EXCULPATION GRANTED IN ARTICLES 9.02 THROUGH 9.04 (INCLUSIVE), THE APPLICABLE RELEASING PARTIES SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE RELEASED PARTIES AND THE EXCULPATED PARTIES AND THEIR ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, ACTION OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST OR REMEDY RELEASED OR TO BE RELEASED UNDER THIS PLAN.

(c)     EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN, THE PLAN SUPPLEMENT, RELATED DOCUMENTS, OR FOR OBLIGATIONS ISSUED PURSUANT TO THE PLAN, ALL ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS OR EQUITY INTERESTS THAT HAVE BEEN RELEASED PURSUANT TO THE PLAN OR THAT ARE SUBJECT TO THE EXCULPATORY PROVISIONS OF ARTICLE 9.04, ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS: (I) COMMENCING OR

CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR EQUITY INTERESTS; (II) ENFORCING, ATTACHING, COLLECTING OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR EQUITY INTERESTS; (III) CREATING, PERFECTING OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR ESTATE OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (IV) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR EQUITY INTERESTS RELEASED, OR SETTLED PURSUANT TO THE PLAN; AND (V) ACTING OR PROCEEDING IN ANY MANNER, IN ANY PLACE WHATSOEVER, THAT DOES NOT CONFORM WITH THE PROVISIONS OF THE PLAN TO THE FULL EXTENT PERMITTED BY APPLICABLE LAW.

(d)     THE RIGHTS AFFORDED IN THE PLAN AND THE TREATMENT OF ALL CLAIMS AND EQUITY INTERESTS HEREIN SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION OF ALL CLAIMS AND EQUITY INTERESTS OF ANY NATURE WHATSOEVER, INCLUDING ANY INTEREST ACCRUED ON CLAIMS FROM AND AFTER THE PETITION DATE, AGAINST THE DEBTORS OR ANY OF THEIR ASSETS, PROPERTY OR ESTATES. ON THE EFFECTIVE DATE, ALL SUCH CLAIMS AGAINST THE DEBTORS SHALL BE FULLY RELEASED, AND ALL SUCH CLAIMS AND EQUITY INTERESTS SHALL BE DEEMED SURRENDERED AND EXTINGUISHED.

(e)     EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR HEREIN OR IN OBLIGATIONS ISSUED PURSUANT HERETO FROM AND AFTER THE EFFECTIVE DATE, ALL CLAIMS AGAINST THE DEBTORS SHALL BE FULLY RELEASED, AND ALL EQUITY INTERESTS SHALL BE DEEMED SURRENDERED OR EXTINGUISHED, AS THE CASE MAY BE, AND THE DEBTORS' LIABILITY WITH RESPECT THERETO SHALL  BE EXTINGUISHED COMPLETELY, INCLUDING ANY LIABILITY OF THE KIND SPECIFIED UNDER SECTION 502(G) OF THE BANKRUPTCY CODE.

(f)     ALL ENTITIES SHALL BE PRECLUDED FROM ASSERTING AGAINST THE DEBTORS, THE DEBTORS' ESTATES, EACH OF THEIR RESPECTIVE SUCCESSORS AND ASSIGNS, AND EACH OF THEIR ASSETS AND PROPERTIES, ANY OTHER CLAIMS OR EQUITY INTERESTS BASED UPON ANY DOCUMENTS, INSTRUMENTS OR ANY ACT OR OMISSION, TRANSACTION OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED BEFORE THE EFFECTIVE DATE.

## ARTICLE X
### CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE

### 10.01  Conditions Precedent to Confirmation

It shall be a condition to Confirmation hereof that the following provisions, terms and conditions shall have been satisfied or waived pursuant to Article 10.03:

(a)      The Bankruptcy Court shall have entered a Final Order, in form and substance reasonably acceptable to the Debtors, the Creditors' Committee, and GHP, approving the Disclosure Statement with respect to the Plan as containing adequate information within the meaning of section 1125 of the Bankruptcy Code.

(b)      The Plan, the Confirmation Order, and documents in the Plan Supplement shall be in a form and substance reasonably acceptable to the Debtors, the Creditors' Committee, and GHP.

## 10.02   Conditions Precedent to the Effective Date

It shall be a condition to the Effective Date that the following provisions, terms and conditions shall have been satisfied or waived pursuant to Article 10.03:

(a)      All of the schedules, documents, supplements and exhibits to the Plan shall have been filed in form and substance reasonably acceptable to the Debtors, the Creditors' Committee, and GHP.

(b)      The Bankruptcy Court shall have entered a Final Order, in form and substance reasonably acceptable to the Debtors, the Creditors' Committee, and GHP confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

(c)      All authorizations, consents and regulatory approvals required, if any, in connection with the Plan's effectiveness shall have been obtained.

(d)      No order of a court shall have been entered and remain in effect restraining the Debtors from consummating the Plan and the transactions contemplated therein, and the Confirmation Order shall be in full force and effect.

(e)      All actions, documents, certificates and agreements necessary to implement the Plan shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable Governmental Units in accordance with applicable laws, and are in form and substance acceptable to the Debtors.

(f)      The Plan Funding Advance of $1,150,000 (less any amounts previously released pursuant to agreement by and among the Debtors, the Creditors' Committee,  and GHP) shall have been released to the Debtors and the sum of $100,000 by Serene and the additional sum of $465,000 by GHP shall have been funded to the Debtors.

(g)      The amount of Allowed Priority Claims to be paid under the Plan shall be no more than $925,000.

## 10.03   Waiver of Conditions

The conditions to Confirmation of the Plan and to the occurrence of the Effective Date set forth in this Article 10 may be waived at any time by the Debtors, with the prior written consent of the Creditors' Committee and GHP.

### 10.04  Effect of Failure of Conditions

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (i) constitute a waiver or release of any claims by or Claims against the Debtors or any of the Released Parties; (ii) prejudice in any manner the rights of the Debtors, any Holders of a Claim or Equity Interest or any other entity; or (iii) constitute an admission, acknowledgment, offer or undertaking by the Debtors, the Creditors' Committee, any Creditors or Equity Interest Holders or any other entity in any respect. In addition, the Debtors, the Creditors' Committee, and all Holders of Claims against or Interests in the Debtors shall be restored to the status quo as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred;

### 10.05  Filing of Notice of the Effective Date

On the Effective Date or as shortly thereafter as reasonably practicable, the Debtors shall file a notice of the Effective Date with the Bankruptcy Court.

### ARTICLE XI
### RETENTION OF JURISDICTION

### 11.01  Bankruptcy Court Jurisdiction

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain and have jurisdiction over the Chapter 11 Cases to the maximum extent as is legally permissible, including, without limitation, for the following purposes:

(a)     To allow, disallow, determine, liquidate, classify or establish the priority or secured or unsecured status of or estimate any Claim or Equity Interest, including, without limitation, the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims or Equity Interests;

(b)     To ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

(c)     To determine any and all applications or motions pending before the Bankruptcy Court on the Effective Date of the Plan, including without limitation any motions for the rejection, assumption or assumption and assignment of any Executory Contract;

(d)     To consider and approve any modification of the Plan, remedy any defect or omission, or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order;

(e)     To determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of the Plan or any Plan Documents or any entity's obligations in connection with the Plan or any Plan Documents, or to defend any of the rights, benefits, Estate property transferred, created, or otherwise provided or confirmed by the Plan or the Confirmation Order or to recover damages or other relief for violations thereof;

LEGAL\50996274\1

(f)     To consider and act on the compromise and settlement of any claim or cause of action by or against the Debtors and their Estates;

(g)     To decide or resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters, or grant or deny any applications involving the Debtors, or the Estates that may be pending on the Effective Date or that may be brought by the Debtors, or any other related proceedings by the Debtors, and to enter and enforce any default judgment on any of the foregoing;

(h)     To decide or resolve any and all applications for compensation;

(i)     To issue orders in aid of execution and implementation of the Plan or any Plan Documents to the extent authorized by section 1142 of the Bankruptcy Code or provided by the terms of the Plan;

(j)     To decide issues concerning the federal or state tax liability of the Debtors which may arise in connection with the confirmation or consummation of the Plan or any Plan Documents;

(k)     To interpret and enforce any orders entered by the Bankruptcy Court in the Chapter 11 Cases;

(l)     To enforce the release, exculpation and injunction provisions contained in Article IX herein; and

(m)     To enter an order closing these Chapter 11 Cases when all matters contemplating the use of such retained jurisdiction have been resolved and satisfied.

## ARTICLE XII
## MISCELLANEOUS  PROVISIONS

### 12.01   Modifications

The Plan Proponents may alter, amend, or modify this Plan or any exhibits or schedules hereto under section 1127(a) of the Bankruptcy Code at any time prior to or after the Confirmation Date but prior to the substantial Consummation of this Plan, provided, however, that any such alteration, amendment or modification does not materially and adversely affect the treatment of Holders of Claims or Interests under this Plan. Any Holder of a Claim that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such Holder.

### 12.02   Successors and Assigns

The rights, benefits and obligations of any Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

LEGAL\50996274\1

### 12.03   Governing Law

Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflict of laws thereof.

### 12.04   Reservation of Rights

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order.  Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by Debtors or any Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) the Debtors with respect to the holders of Claims or Equity Interests or other parties-in-interest; or (2) any holder of a Claim or other party-in-interest prior to the Effective Date.

### 12.05   Section 1146 Exemption

Pursuant to Section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

### 12.06   Section 1125(e) Good Faith Compliance

The Plan Proponents and each of their respective Representatives, shall be deemed to have acted in "good faith" under Section 1125(e) of the Bankruptcy Code.

### 12.07   Further Assurances

The Debtors, the Creditors' Committee, the Plan Administrator, all holders of Claims receiving Distributions hereunder, the holders of Equity Interests in the Debtors and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

### 12.08   Service of Documents

Any pleading, notice or other document required by the Plan to be served on or delivered to the Plan Proponents shall be sent by first class U.S. mail, postage prepaid as follows:

LEGAL\50996274\1

To the Debtors:

Thomas Francella, Esq.
Cozen O'Connor
1201 North Market Street, Suite 1001
Wilmington, DE  19801
Email:  tfrancella@cozen.com

Alan J. Friedman, Esq.
Melissa Davis Lowe, Esq.
Shulman Bastian Friedman & Bui LLP
100 Spectrum Center Drive, Suite 600
Irvine, CA 92618
E-mail: afriedman@shulmanbastian.com
E-mail: mlowe@shulmanbastian.com

To the Creditors' Committee:

Brya M. Keilson, Esq.
Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
E-mail: bkeilson@morrisjames.com

Gianfranco Finizio, Esq.
Kilpatrick Townsend & Stockton LLP
The Grace Building
1114 Avenue of the Americas
New York, NY  10036-7703
E-mail: gfinizio@kilpatricktownsend.com

### 12.09   Filing of Additional Documents

On or before the Effective Date, the Plan Proponents may File with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

### 12.10   No Stay of Confirmation Order

The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Fed. R. Bankr. P. 3020(e) and 7062.

* * * * *

Dated: February 16, 2021

31